PROTANE GAS CO. OF PUERTO RICO, INC., y PROTANE GAS DE CAGUAS, INC., demandantes y apeladas, *v.* SANTIAGO RAMOS, demandado y apelante.

*Número:* AP-66-30     *Resuelto:* 15 de noviembre de 1967

---

*Gregorio Ramos Rivera,* abogado del apelante; *Norman A. Pardo,* abogado de las apeladas.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Las compañías demandantes solicitaron y obtuvieron del Tribunal Superior, Sala de Caguas, un interdicto permanente contra el apelante ordenándolo a desistir de intervenir con las instalaciones propiedad de una de las demandantes que ésta tiene en Caguas y "áreas adyacentes." Recurre a nosotros el apelante para que revoquemos y dejemos sin efecto la sentencia del tribunal de instancia por entender que la misma viola su derecho constitucional a contratar y a dedicarse a una actividad comercial lícita. También argumenta que la sentencia recurrida es contraria a la política pública de Puerto Rico según expresada en la Ley para prohibir las prácticas monopolísticas y proteger la libre competencia en los negocios. Ley Núm. 77 de 25 de junio de 1964, 10 L.P.R.A. secs. 257 y ss.

Las demandantes se dedican a la venta y distribución de enseres de cocina y de gas propano-butano en cilindros de metal. Dicho gas se utiliza para cocinar. Para llevar el gas desde los cilindros, los cuales se instalan en las casas o donde los usuarios lo pidan, hasta las estufas se utiliza una tubería y un regulador de presión. Los consumidores compran el gas pero no los cilindros. El suplidor se lleva el cilindro vacío cada vez que lo repone con uno lleno. Los cilindros, la tubería y el regulador de presión los deja la compañía con el consumidor. Cuando se hace la instalación el consumidor firma un contrato impreso de "Préstamo de Equipo" que para esos fines suple la compañía. En uno de sus trece párrafos numerados que contiene dicho contrato se expresa lo siguiente:

"El Consumidor no destinará los equipos prestados a un uso distinto de aquel para que se prestaron ni los usará para comprar gas a cualquier otra persona que no sea La Compañía y deberá devolverlos a La Compañía en un término no mayor de 10 días en caso de que deje de usarlos por cualquier causa que no sea por culpa de La Compañía." [1]

El demandado fue empleado y luego un ejecutivo de una de las demandantes por aproximadamente año y medio hasta que dejó la compañía, y luego se estableció por su cuenta, dedicándose a la venta de gas fluido, en competencia con las demandantes. Las demandantes tenían, a la fecha del pleito, unos 10,400 clientes en Caguas. El demandado les vende, o vendía a la fecha del litigio, a distintos consumidores incluyendo a un número de aquéllos que tienen en sus casas instalaciones de las demandantes.

Argumentan las demandantes que el demandado, con motivo de su empleo con una de ellas, tenía acceso a sus récords y a los nombres y direcciones de sus clientes, y que al ven-

---

[1] Cf. sobre contratos de adhesión *Maryland Cas. Co.* v. *San Juan Racing Association*, 83 D.P.R. 559, 566 (1961); *Zequeira* v. *CRUV*, 83 D.P.R. 878, 880 (1961); *Barreras* v. *Santana*, 87 D.P.R. 227, 233 (1963).

derle gas a esos clientes incurre en una práctica desleal y en uso indebido de información confidencial de las demandantes.

■ Ni de los hechos que encontró probados el tribunal de instancia, ni de los autos, surge que el demandado se apropiase de lista de clientes alguna. Es verosímil, y hasta probable, que el demandado aprendiese el negocio o parte del negocio de vender y distribuir gas fluido con motivo de su trabajo con una de las demandantes. Eso ocurre siempre que una persona trabaja para cualquier persona o empresa. El proceso de aprendizaje que es simultáneo con el ejercicio de cualquier oficio o profesión es inevitable y no vemos como pueda prohibirse. Las demandantes no tienen una franquicia que les conceda un monopolio en Caguas, o fuera de Caguas, para la venta de gas fluido. Los monopolios no se presumen ni se favorecen. Ni la ley positiva de Puerto Rico, ni la política pública de la cual la ley positiva es el indicio por excelencia, ni el derecho, ni la economía favorecen los monopolios. (²) Éstos solamente se justifican, por vía de excepción,

---

(²) Ley Núm. 77 de 25 de junio de 1964; 10 L.P.R.A. secs. 257 y ss.; 15 U.S.C. §§ 1–40; Williams, *"Distribution and the Sherman Act,"* 1967 Duke L. J. 732; Von Kalinowski, *"The Per Se Doctrine—An Emerging Philosophy of Antitrust Law,"* 11 U.C.L.A. L. Rev. 569 (1964); Krasnow, *"Implications of Brown Shoe Co. v. United States on the Law of Mergers,"* 23 Fed. B.J. 225 (1963); Hanson y Von Kalinowski, *"Symposium: Trade Regulation—The Status of State Antitrust Laws with Federal Analysis,"* 15 W. Res. L. Rev. 9 (1963); *"Antitrust and the Common Market—A Symposium."* Algunos artículos sobre diferentes aspectos por Helmut Coing, Wilbur L. Fugate, George Nebolsine y otros, 38 N.Y.U.L. Rev. 435 (1963); Walden, *"Antitrust in the Positive State,"* 41 Texas L. Rev. 741 (1963) Parte I y en 42 Texas L. Rev. 603 (1964) Parte II; Schapiro, *"The German Law Against Restraints of Competition—Comparative and International Aspects,"* 62 Colum. L. Rev. 1 (1962); Rahl, *"Symposium on Price Competition and Antitrust Policy,"* 57 Nw. U.L. Rev. 137 (1962); Loevinger, *"The New Frontier in Antitrust,"* 39 Texas L. Rev. 865 (1961); Sieker, *"The Role of the States in Antitrust Law Enforcement—Some Views and Observations,"* 39 Texas L. Rev. 873 (1961); Stern, *"A Proposed Uniform State Antitrust Law: Text and Commentary on a Draft Statute,"* 39 Texas L. Rev. 717 (1961); Rahl, *"Toward a Worthwhile State Antitrust Policy,"* 39 Texas L. Rev. 753 (1961); Handler, *"Recent Anti-*

cuando las circunstancias geográficas, poblacionales y económicas o cuando la naturaleza del servicio a prestarse o del producto a venderse son tales que una comunidad queda mejor servida por un monopolio que por la ausencia de éste. ([3])

■ Lo que ocurre en este caso es que algunos clientes de las compañías demandantes violaron el contrato de préstamo de equipo que suscribieron con ellas. El demandado no fue parte en esos contratos y por lo tanto dichos contratos no le obligan. Arts. 1209 y 1211 del Código Civil; 31 L.P.R.A. secs. 3374 y 3376. Dichos contratos de préstamo son, específicamente, contratos de comodato, Art. 1631 del Código Civil; 31 L.P.R.A. sec. 4511. La relación contractual que crean sólo vincula a la compañía comodante y los usuarios comodatarios. ([4]) Probablemente en aquellos casos en que los comodatarios utilicen las instalaciones propiedad de las demandantes para fines no permitidos por el contrato de comodato, éstas pueden reclamar dichas instalaciones pero dichos contratos no pueden dar base para un interdicto prohibiéndole a un tercero, el aquí demandante, vender gas fluido a esos consumidores. Como expresamos anteriormente, es a sus clientes y comodatarios a quienes las demandantes pueden dirigirse y no contra su competidor.

*Por las razones anteriormente expresadas se revocará la sentencia del Tribunal Superior, Sala de Caguas, dictada en este caso.*

---

trust Developments," 71 Yale L.J. 75 (1961) ; Friedmann, *"Freedom of Trade and Policy,"* Cap. 8 de *Law in a Changing Society* (1959) ; Carlston, *"Anti-Trust Policy,"* 60 Yale L.J. 1073; *Report of the Attorney-General's Committee to study Anti-Trust Laws, 1956.*

([3]) Para ejemplos de monopolios por razón de orden público, véase el artículo *"Monopolies, Public"* en X Encyclopaedia of the Social Sciences 619 (1962).

([4]) V. Arts. 1632–1643 del Código Civil; 31 L.P.R.A. secs. 4521–4554.