# 96 DTA 59

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL II DE BAYAMON
PANEL C**

GUSTAVO HERMIDA CELA, GLORIA COLON Y LA SOCIEDAD
LEGAL DE GANANCIALES COMPUESTA ENTRE AMBOS
Demandantes-Apelados

v.

CARLOS RODRIGUEZ ROSADO, GRISELLE AVILES Y LA SOCIEDAD
DE BIENES GANANCIALES COMPUESTA ENTRE AMBOS
Demandados-Apelantes

Núm. KLAN-95-00338

San Juan, Puerto Rico, a 16 de abril de 1996

Panel integrado por su presidenta, Juez Rivera de Martínez y
los Jueces Martínez Torres y Rodríguez García

Martínez Torres, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

Emprendemos en este recurso la tarea no muy frecuente de estudiar el alcance del Artículo 1384 del Código Civil, 31 L.P.R.A. sec. 3852, referente a vicios ocultos de animales que son objeto de contratos de compraventa.

El 7 de febrero de 1994, el co-demandante-apelado, Gustavo Hermida Cela, compró al co-demandado-apelante, Carlos Rodríguez Rosado, una yegua alazana de paso fino, de nombre *"La Rubia Presumida"*. El precio convenido y pagado fue de cuatro mil dólares ($4,000), según surge del contrato otorgado entre las partes. Luego de comprar la yegua, el Sr. Hermida Cela la llevó a un establo en Guaynabo donde dos o tres días después un veterinario de apellidos Díaz Umpierre ██ la examinó. Este examen reveló un posible padecimiento de *"laminitis"* o enfermedad en los cascos de las patas delanteras. Dicha condición fue certificada por un doctor de apellido González, ██ luego que le tomara radiografías a la yegua el 9 de febrero de 1994.

Una de las razones que expresó el comprador para adquirir la yegua era su interés en utilizarla para cabalgatas. Sin embargo, por motivo de la laminitis el animal no puede ser utilizado para cabalgar, ya que el dolor que le produce esta enfermedad la puede hacer caer. Valga aclarar que no se ha presentado prueba de que el vendedor hubiera expresado que la yegua era apta para cabalgar. De hecho, el contrato escrito entre las partes no hace referencia al uso del animal. Ni siquiera sabemos si el vendedor se enteró del deseo del comprador de utilizar la yegua para cabalgar.

Ante la enfermedad crítica de la yegua, el comprador radicó demanda el 16 de marzo de 1994 contra el vendedor, Rodríguez Rosado, su esposa y la sociedad legal de bienes gananciales compuesta por ambos. Alegó que esta enfermedad constituye un vicio oculto por el cual responde el vendedor bajo la doctrina de saneamiento. El vendedor demandado presentó como perito al Dr. Carlos Soto

Ortiz, quien atestiguó que para la fecha en que las partes llevaron a cabo el contrato ya la yegua padecía de la enfermedad. Declaró que los cascos de sus patas mostraban unos cambios degenerativos, condición crítica que evidencia que la yegua padecía de la enfermedad, desde mucho antes de la fecha de la compraventa. En esto coincidieron los peritos de ambas partes. Aunque los expertos detectaron de inmediato la enfermedad del animal y ofrecieron un diagnóstico preliminar, la enfermedad no pudo diagnosticarse con certeza médica hasta tanto se le tomaron radiografías a la yegua.

El Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de Guaynabo (Hon. Carlos M. Rodríguez Muñiz, Juez), dictó sentencia en la que declaró al vendedor, Rodríguez Rosado, responsable por lo que calificó como vicios ocultos que sufre la yegua. El tribunal ordenó a los demandados devolverle cuatro mil dólares ($4,000) al co-demandante Hermida Cela. De esta sentencia del 9 de mayo de 1995, apela la parte demandada. Alega en su recurso que erró el Tribunal de Primera Instancia al declarar con lugar la demanda a base de lo que dispone el Artículo 1373 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3841. ■ La parte demandada-apelante entiende que existen otras disposiciones sobre vicios ocultos en animales que son las que aplican a la controversia y no la disposición de carácter general que utilizó el Tribunal de Primera Instancia.

## II
El Artículo 1363 del Código Civil de Puerto Rico, *Id.* sec.. 3831, dispone:

*"En virtud del saneamiento a que se refiere la sec. de este título, el vendedor responderá al comprador:*

*(1) De la posesión legal y pacífica de la cosa vendida.*

*(2) De los vicios o defectos ocultos que tuviere."*

Este artículo pretende otorgar al vendedor la obligación de garantizarle al comprador el goce útil y pacífico de la cosa que le vendió. Este tipo de garantía se conoce como saneamiento. El saneamiento asegura al comprador que la cosa adquirida por él estará libre de vicios y gravámenes ocultos (goce útil) y además, le asegura que el título y la posesión no le serán disputados por terceros reclamantes (goce pacífico). J.R. Vélez Torres, *Curso de Derecho Civil, Derecho de Contratos,* Rev. Jur. U.I.A., San Juan, 1990, Tomo IV, Vol. II.

Los vicios ocultos pueden ser jurídicos, en cuyo caso consistirán en una limitación del derecho transmitido, o pueden ser de hecho, como cuando se trata de defectos intrínsecos de la cosa vendida. Sea cual fuere el caso, lo crucial es que para que un vicio se pueda considerar oculto deben concurrir los siguientes factores:

*"(a) Que los defectos de la cosa vendida no eran ni pudieron ser conocidos por el adquirente de la cosa.*

*(b) El defecto ha de ser serio o de tal importancia que haga a la cosa vendida inútil para el uso a que está destinada o disminuya dicho uso de forma tal que el comprador no la hubiera comprado de haberlo conocido, o hubiere pagado un precio mucho menor por ella.*

*(c) El defecto ha de ser preexistente a la venta."*

(d) Además de todo lo anterior, la reclamación debe ser interpuesta en término. *Ferrer v. General Motors Corp.*, 100 D.P.R. 246, 255 (1971); *In Re: Bird Copying Machines, Inc.,* 618 F. 2d 883, 885 (1er. Cir. 1980); J. R. Vélez Torres, *supra.*

Una vez determinado que el defecto constituye un vicio oculto, de acuerdo al análisis anterior, el Artículo 1375 de nuestro Código Civil, *supra* sec. 3843, otorga dos opciones al comprador. Puede optar entre desistir del contrato, abonándosele los gastos que pagó, o rebajar una cantidad proporcional del precio, a juicio de peritos. Este articulado provee la opción entre lo que se conoce como la acción redhibitoria (para la resolución de la compraventa) y la acción estimatoria o *quanti minoris (para la reducción del precio).* ■

El comprador Hermida Cela optó por ejercer la acción redhibitoria, exigiendo que se le abonara todo lo que pagó y que se diera por desistido el contrato. Presentó su causa de acción, junto a su esposa y la sociedad legal de bienes gananciales integrada por ambos, dentro del término de cuarenta (40) días que le impone el Artículo 1385 del Código Civil, *supra*, sec. 3853, ■ ya que la venta se efectuó el 7 de febrero de 1994 y la demanda se presentó el 16 de marzo del mismo año.

El Tribunal de Primera Instancia falló a favor de los demandantes por entender que éste es un caso donde la yegua sufre de un vicio oculto. El tribunal resolvió a base de lo dispuesto en los Artículos 1373 a 1375 del Código Civil, *supra,* secs. 3841-43.

### III

El Código Civil contiene normas especiales destinadas a regular los requisitos y efectos del saneamiento en la venta de animales o ganado. Así, Puig Brutau, refiriéndose al Código Civil español, enumera las siguientes:

*"(1) Ha de tratarse de vicio oculto (Art. 1495 español).*

*(2) Ha de tratarse de vicio o defecto determinado por la ley o los usos locales (Art. 1496 español).*

*(3) No ha de tratarse de ventas hechas en feria o en pública subasta, ni de caballerías enajenadas como de desecho, pues el Artículo 1493 español dispone que en tales casos no procederá el saneamiento por los vicios ocultos de los animales.*

*(4) Ha de ejercitarse la correspondiente acción redhibitoria dentro de cuarenta (40) días contados desde la entrega de los animales al comprador (Art. 1496 español). Por tanto, el comprador podrá optar entre la acción redhibitoria y la estimatoria."* J. Puig Brutau, *Fundamentos de Derecho Civil,* 2da ed. rev. y ampl., Bosch, Barcelona, , Tomo II, Vol. II, pág. 198.

Nuestro Código Civil contempla las mismas disposiciones en sus Artículos 1380 al 1388, *supra*, secs. 3848 *et seq.*, equivalentes a los artículos citados del Código Civil español, aplicables al saneamiento por vicios ocultos en animales.

El Artículo 1384 de nuestro Código Civil, *Id.,* sec. 3852, dispone lo siguiente:

*"Cuando el vicio oculto de los animales, aunque se haya practicado reconocimiento facultativo, sea de tal naturaleza que no basten los conocimientos periciales para su descubrimiento, se reputará redhibitorio.*

*Pero si el profesor, por ignorancia o mala fe, dejara de descubrirlo o manifestarlo, será responsable de los daños y perjuicios."*

Manresa explica el equivalente español a este artículo como sigue: *"No puede considerarse oculto lo que está a la vista y puede apreciarse por cualquier comprador, aunque sea profano. En tales casos aunque exista vicio redhibitorio, no procede nunca el saneamiento."* J.M. Manresa y Navarro, *supra*, pág. 276. Añade:

*"Pero el legislador no olvida que pueden intervenir en la compra profesores facultativos, personas peritas, que porrazón de su oficio o profesión, deben fácilmente conocer esos vicios o defectos, y entonces ya dice el artículo 1.484 [1373 P.R.] que, aunque esos vicios o defectos no estén a la vista tampoco procede la acción redhibitoria."*

*Id.*

En relación al Artículo 1495 español (1384 nuestro) aclara que:

*"Aunque intervenga perito, y medie, por tanto, un reconocimiento facultativo el vicio redhibitorio puede ser de tal naturaleza que no basten los conocimientos periciales para descubrirlo. Entonces el vicio vuelve a estimarse oculto y procede la redhibición, sin que pueda exigirse a ese perito*

*responsabilidad alguna." Id.*

Scaevola nos ofrece una interpretación más al punto sobre este artículo:

*"[P]rimero, que los vicios reclamables son los ocultos; segundo, que no son ocultos los defectos que puede descubrir la capacidad profesional. Los vicios ostensibles y aparentes no son nunca redhibitorios ni en los animales ni en las demás cosas; los **aparentes para un perito** no lo son tampoco, **aunque resulten ocultos para los profanos;** y quiere decirse, después de esto, que no dejan de ser redhibitorios aquellos defectos que aun interviniendo en la compra un Profesor veterinario, hubieran de escapar por su naturaleza al reconocimiento practicado por éste."*

Q.M. Scaevola, *Código Civil Concordado y Comentado Extensamente,* Madrid, 1906, Tomo XXIII, pág. 672 (énfasis suplido).

Lo más importante en cuanto a la interpretación de este Artículo es determinar si era requerida o si en su efecto, se produjo la intervención de un veterinario en la compraventa.

Al respecto, nos señala Scaevola:

*"En primer lugar, si no es preceptiva la intervención de un facultativo en la compra de animales, falta poco en ciertos casos para que lo sea, pues nadie se decide generalmente a adquirir un caballo ó un mulo sin que el veterinario lo reconozca de antemano y lo de por bueno....*

*Pero sucede, además, que sobre la base de no constituir una obligación el reconocimiento hecho por el veterinario, pues en la venta misma de caballos suele no pedirse, y desde luego falta en absoluto cuando se trata de ganados menores..., el Código ha tenido que preocuparse del distinto caso de que dicho veterinario intervenga o no, y de los diversos efectos a que esta intervención debe dar origen."*

*Id.,* pág. 673.

Al respecto, Scaevola nos aclara que existen tres posibles situaciones en la compraventa de animales: (1) Cuando interviene un veterinario --o cuando éste no ha intervenido pero la ley o la costumbre hace necesaria su participación-- y éste descubre o debía poder descubrir el vicio del animal, (2) cuando bajo las mismas premisas, el veterinario no descubre el vicio, ni es posible que lo descubra, o (3) cuando no se requiere la presencia del veterinario y, en efecto, el veterinario no ha intervenido. Solamente las primeras dos situaciones señaladas están comprendidas en el Artículo 1495 español (Artículo 1384 nuestro), *supra.* En otras palabras, el Artículo 1384 de nuestro Código civil sólo aplica cuando interviene, o se requiere por ley o costumbre que intervenga, un veterinario en la compraventa. De lo contrario, aplican las normas generales sobre vicios ocultos en una compraventa. Dice el comentarista:

*"La hipótesis más sencilla, que es la de no practicarse reconocimiento pericial, **no se ha regulado especialmente en el artículo 1.495.** Queda sometida, por consecuencia, a las disposiciones anteriores, y sobre este punto, a la doctrina general de que **el vendedor responde de todos aquellos vicios o defectos que el comprador profano no pudo conocer.***

*Interviniendo el veterinario, ya porque la costumbre lo imponga, ya porque se halle mandado por disposiciones locales, ya simplemente porque de hecho tenga lugar, la situación de los contratantes es muy distinta. Si el vendedor entonces sigue respondiendo de los vicios que se hallen ocultos la vista del veterinario, no debe ser objeto de reclamaciones por los que puedan ó deban ser conocidos del mismo."*

*Id.,* págs. 673-74 (énfasis suplido).

El autor nos explica entonces que cuando el veterinario intervino o debía intervenir, la responsabilidad deja de ser del vendedor:

*"Aquí es donde se produce la eficacia mayor, acaso la única, de las que se pretendió atribuir al artículo 1.495 [1384 P.R.] En tales casos, si el Profesor declara sano el animal, el vendedor no tiene ya nada de qué responder, es el veterinario, buscado por el comprador, ó impuesto, quien debe quedar responsable del vicio, con lo cual se produce una situación diferente, según tres clases de circunstancias distintas: si se **trata de vicios que pudo o debió conocer el profano, responderá de ellos el comprador; si de los que pudo ó debió conocer el profesor veterinario, por ser técnicos, el responsable será el mismo profesor; si de los que el dictamen pericial no podía tomar en cuenta, el vendedor será el responsable.** La determinación del deber en que el profesor veterinario se encuentra de responder de los daños y perjuicios, cuando, por ignorancia ó mala fe, deja de manifestar los vicios del animal, con la consiguiente irresponsabilidad del vendedor, es el fin propio que corresponde al artículo 1.495 [1384 P.R.] **El veterinario se sustituye al vendedor en tales casos, y el mayor ó menor alcance de su responsabilidad consiste en que proceda con negligencia ó con mala fe....."*

*Id.,* pág. 674 (énfasis suplido).

Del mismo modo se expresa García Cantero:

*"Si la compraventa de animales se ha verificado sin previo reconocimiento pericial del estado sanitario de aquéllos, no cabe otra solución que referirse al artículo 1.484 [1373 P.R.] y sostener que el vendedor no será responsable de los defectos manifiestos o que estuvieren a la vista, ni tampoco de los que no lo estén "si el comprador es un perito que, por razón de su oficio o profesión, debía fácilmente conocerlos"; esta última circunstancia se dará no sólo cuando el comprador sea un veterinario, sino cuando se trate de un avezado tratante de ganado.*

*Si en la compraventa de animales se ha practicado reconocimiento facultativo, el vendedor no responderá si los vicios son de tal naturaleza que el perito debía normalmente reconocerlos. Manresa-Bloch proponen la fórmula de que bastase la ilustración media de un profesor honrado para su descubrimiento. Si, ello no obstante, se manifiesta ulteriormente el vicio o defecto, el Código declara una especial responsabilidad del Profesor....*

*Si el vicio es de tal naturaleza que no basten los conocimientos periciales para su descubrimiento, se reputará redhibitorio, dándose así origen al vicio o defecto verdaderamente oculto, no sólo a los ojos del comprador medio, sino a los de un experto en el ejercicio normal de sus conocimientos. Ahora bien, que el Código diga que el vicio se reputa redhibitorio no significa, sin más, que ha nacido la responsabilidad del vendedor, sino únicamente que se ha cumplido el primer requisito de ser oculto...."*

G. García Cantero, *Comentarios al Código Civil y Compilaciones Forales,* 2da ed. (dirigidos por M. Albaladejo y S. Díaz, Alabart), Rev. Derecho Privado, Madrid, 1991, T. XIX, pág. 415 (énfasis en el original; notas al calce omitidas).

Obsérvese que no se impone como deber al comprador el que vaya acompañado de un perito en la materia relacionada con lo que desea comprar. Lo que el Artículo 1384, *supra*, establece es que cuando se requiere la intervención del veterinario, comparezca o no éste, se le impone responsabilidad al vendedor por aquellos vicios que permanezcan ocultos tras el examen del veterinario, pero no por los vicios que pueden o deben ser apreciados por el facultativo de animales.

Aplicada toda esta normativa al caso de autos, debemos reiterar que la ley o la costumbre no imponen al comprador el deber de estar acompañado por un veterinario al momento de efectuar la compraventa de un equino. Nadie ha alegado tal cosa. Como cuestión de realidad, ningún veterinario intervino en la compraventa de *"La Rubia Presumida"*. No hay duda, pues, según la doctrina antes reseñada, de que nos encontramos ante una situación que no está contemplada por el Artículo 1384 del Código Civil, *supra*: la compraventa de un animal en la que no intervino ni se requería la presencia de un veterinario.

## IV

Así pues, la situación de autos está reglamentada por la norma general sobre vicios ocultos expuesta en el Artículo 1373, *supra*. Al respecto, debemos puntualizar que no hay duda de que la

enfermedad que padece el animal estaba presente al momento de la compraventa. Según testificaron los peritos de ambas partes, la condición crítica de la enfermedad es indicio de que el defecto del animal es preexistente a la compraventa.

No existe duda tampoco de que el defecto del animal es uno de carácter grave, que disminuye el uso apropiado de la yegua a tal grado que el comprador, según él mismo manifestó para el récord, no la habría adquirido. Así pues, la laminitis de la yegua es un defecto no manifiesto al comprador que resulta nocivo para la utilidad del animal, con arreglo a los usos frecuentes a los que se destina una yegua. E.g., *Boyd v. Tribunal Superior*, 101 D.P.R. 651, (1973); *Ferrer v. General Motors Corp.*, *supra*, págs. 255-56. Así lo concluyó el foro de instancia. Sentencia, págs. 3-4. Se trata de una determinación de hecho que el vendedor apelante no ha rebatido. *D.A.C.O. v. Marcelino Mercury Inc.*, 105 D.P.R. 80, 84-85 (1976) No estamos ante un defecto de poca monta que no daría lugar a la redhibición. *García Viera v Ciudad Chevrolet, Inc.*, 110 D P R. 158, 162 (1980); J. M. Manresa y Navarro, *supra*, pág 250; Q. M. Scaevola, *supra*, pág 609.

El Tribunal de Primera Instancia concluyó como cuestión de hecho que la enfermedad crítica que padece la yegua no pudo haber sido conocida por el comprador, por tratarse de un lego en asuntos equinos Sentencia, pág. 4. El vendedor apelante no nos ha puesto en condiciones de alterar esa determinación de hecho del Tribunal de Primera Instancia, pues no procuró la producción de una exposición de la prueba presentada en el proceso judicial. *García Viera v Ciudad Chevrolet, Inc.*, *supra*; *D.A.C.O. v. Marcelino Mercury, Inc., supra*. *"En todo caso el carácter oculto ha de ser para el comprador, pues se considera irrelevante en cuanto a la existencia del vicio que el vendedor lo conozca o no..."* G. García Cantero, *supra*, pág. 372 . ■

A base de todo lo expuesto, concluimos que el comprador Hermida Cela tenía derecho a instar la acción redhibitoria contra el vendedor, Rodríguez Rosado. El Tribunal de Primera Instancia aplicó la normativa correcta Los demandantes-apelados probaron su causa de acción Por ello, se confirma la sentencia apelada. Ésta dispone que se devuelvan a los demandantes-apelados los $4,000 que pagaron por la yegua *"La Rubia Presumida"*, y que se les pague intereses al tipo legal.

La tasa de interés aplicable es de 9.5%, conforme a la reglamentación del Comisionado de Instituciones Financieras vigente cuando se dictó la sentencia del Tribunal de Primera Instancia el 28 de febrero de 1995, a computarse desde esa misma fecha. Regla 44.3 de Procedimiento Civil. A cambio, los demandantes-apelados devolverán el animal a los demandados-apelantes, según ordenó el foro de instancia, de conformidad con lo dispuesto por el Artículo 1387 del Código Civil, *supra*, sec 3855. ■

Lo acordó el Tribunal y lo certifica la Secretaria General.

Sonia Pacheco Román
Secretaria General

### ESCOLIOS 96 DTA 59

**1.** Su nombre completo no surge del expediente.

**2.** El nombre completo de este veterinario tampoco aparece en el expediente.

**3.** Dispone:

*"§ 3841.-Saneamiento por defectos o gravamenes ocultos-Defectos ocultos y manifiestos*

*El vendedor estará obligado al saneamiento por los defectos ocultos que tuviere la cosa vendida, si la hacen impropia para el uso a que se la destina o si disminuyen de tal modo este uso que, de haberlos conocido el comprador, no la habría adquirido o habría dado menos precio por ella; pero no será responsable de los defectos manifiestos o que estuvieren a la vista, ni tampoco de los que no lo estén, si el comprador es un perito que, por razón de su oficio o profesión, debía fácilmente conocerlos."*

**4.** La doctrina de los vicios redhibitorios se aplicó en un principio en Roma únicamente a las ventas de animales. Luego, por analogía, se aplicó a la venta de inmuebles. J.M. Manresa y Navarro, *Comentarios al Código Civil Español,* 5ta ed. rev., Inst. Ed. Reus, Madrid, 1950, Tomo X, pág. 249.

Más aún, en el antiguo Derecho romano, este tipo de acciones no era exigible a menos que hubieran sido pactadas por las partes. Sin embargo, tales estipulaciones llegaron a ser tan comunes que en la época romano-helénica, los ediles, encargados de vigilar la venta de determinados animales en el mercado, establecieron ambas acciones (redhibitoria y estimatoria) mediante Edicto, con la intención de evitar los fraudes. Ambas acciones fueron incorporadas al Digesto (Libro 21, título 1, Leyes 19 -párrafo 6to- 28 y 38). De ahí, pasaron a las Partidas (Partida V, Título V, Ley 65) y luego, al Código Civil español. I. Gómez Calero, *Sobre la "nulidad" del Artículo 1.494 del Código Civil,* 52 Rev. Der. Privado 955 (1968). Es así como ambas acciones llegan a Puerto Rico.

**5.** Reza así:

" *§ 3853. - Término para ejercer la acción redhibitoria*

*La acción redhibitoria que se funda en los vicios o defectos de los animales deberá interponerse dentro de cuarenta (40) días, contados desde el de su entrega al comprador, salvo que por el uso en cada localidad se hallen establecidos mayores o menores plazos. Esta acción en la venta de animales sólo se podrá ejercitar respecto de los vicios y defectos de los mismos que estén determinados por la ley o por los usos locales.* "

**6.** El Artículo 1418 del Proyecto de Código Civil Español de García Goyena de 1851 enumeraba doce vicios redhibitorios en el caballo, mulo y asno, el Artículo 1420 hacía referencia a cuatro defectos redhibitorios en el ganado vacuno; el Artículo 1422 establecía tres vicios redhibitorios en el ganado lanar; y el Artículo 1424 señalaba un defecto redhibitorio de los cerdos. La lista se basó en las recomendaciones de la Junta de Catedráticos de la Escuela Superior Veterinaria de España. Es interesante que entre los vicios ocultos de los caballos que dan lugar a la acción redhibitoria se encontraba la *"cojera, sea en frío ó en caliente..."*, que durara al menos nueve días. Q.M. Scaevola, *supra*, pág. 679; J.M. Manresa y Navarro, *supra*, pág. 274.

El código español, contrario al alemán, requiere que la gravedad del defecto oculto se determine caso por caso, por lo que no depende de un listado preestablecido por ley o reglamento. Ello ha resultado *"beneficioso pues no coarta el progreso científico, ni impide la aplicación de los avances en la ciencia veterinaria."* G. García Cantero, *supra*, pág. 416.

**7.** *"§ 3855.-Devolución del animal al rescindirse la venta*

*Resuelta la venta, el animal deberá ser devuelto en el estado en que fue vendido y entregado, siendo responsable el comprador de cualquier deterioro, debido a su negligencia, y que no proceda del vicio o defecto redhibitorio."*