# 97 DTA 102

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL I DE SAN JUAN**

WILLIAM RODRIGUEZ Y/O ROSA HERNANDEZ MEDINA
Querellantes-Recurridos

v.

CHARLIE AUTO SALES, CORP. HYUNDAI DE BAYAMON, MITSUBISHI SALES OF CARIBBEAN, INC., SCOTIABANK DE PUERTO RICO
Querellados-Recurrentes

Núms. KLAA-96-00400/KLAA-96-00401

San Juan, Puerto Rico, a 30 de abril de 1997

Panel integrado por su presidenta, Juez Rivera de Martínez
y los Jueces Cabán Castro y Rivera Pérez

Rivera de Martínez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Mediante el recurso de epígrafe, los recurrentes solicitan que revisemos la resolución emitida por el Departamento de Asuntos del Consumidor, en adelante D.A.C.O., el 22 de diciembre de 1994. ▉ Dicho Departamento ordenó a Charlie Auto Sales, Corp, h/n/c Hyundai de Bayamón y a Mitsubishi Motors Sales of the Caribbean, Inc., a pagar, en forma solidaria, a la parte querellante, aquí recurrida, la suma de mil ($1,000) dólares, más el interés legal vigente, a partir de la notificación de dicha resolución. Se determinó que los querellados, aquí recurrentes, cumplieron de manera negligente con su obligación de reparar, dentro de la garantía, el vehículo de la parte querellante y que el hecho de que finalmente hubieran logrado reparar las diferencias encontradas es inmaterial y no elimina los perjuicios ocasionados a dicha parte.

Para ubicar la controversia en su justa perspectiva, examinemos los hechos que originan el recurso ante nos.

### I

Según surge de la resolución recurrida y los demás documentos ante nos, el 24 de abril de 1993, los querellantes, aquí recurridos, compraron a Charlie Auto Sales, Corp., h/n/c Hyundai de Bayamón, aquí recurrente, un automóvil Hyundai coupe del año 1993. El precio convenido fue de once mil setecientos noventa y cinco ($11,795) dólares. Los recurridos pagaron dos mil setecientos noventa y cinco ($2,795) dólares de pronto y financiaron el remanente a través de Scotiabank de Puerto Rico. Le fue otorgada por el fabricante una garantía de tres (3) años o treinta y seis mil (36,000) millas. Mitsubishi Sales of Caribbean, Inc., es la distribuidora de fábrica en Puerto Rico de los vehículos de motor Hyundai.

El 16 de junio de 1993 la querellante-recurrida Rosa Hernández, llevó su vehículo al local de la vendedora alegando que *"estaba muy vago"* y que daba *"halones al desarrollar"*. Luego de permanecer allí por cuatro días, el 19 de junio de 1993 le fue entregado el vehículo a la recurrida.

El 20 de julio de 1993 la querellante-recurrida regresó nuevamente y le explicó a la vendedora que el auto continuaba con los mismos defectos. Ese día le hicieron al auto alegadamente ciertos ajustes en el motor y le entregaron nuevamente el vehículo a la recurrida.

Debido a que los problemas continuaban, el 24 de agosto de 1993 la vendedora reemplazó el rectificador y el regulador del vehículo. La razón para cambiar estas piezas fue que el auto presentó problemas con el sistema de carga.

El carro continuó operando mal, por lo cual la recurrida radicó una querella el día 22 de diciembre de 1993, alegando lo siguiente:

*"1) Que el vehículo manifestó defectos desde la primera semana de haberse comprado.*

*2) Que desde el principio el vehículo estaba vago, daba halones y prendía la luz del "check engine", defectos que persistían a pesar de la vendedora haber intervenido con la unidad efectuando*

*reparaciones en seis (6) ocasiones.*

*3) Que debido a los defectos no ha podido disfrutar del vehículo, lo cual le ha ocasionado daños y perjuicios, así como angustias mentales."*

*La vendedora recibió el vehículo nuevamente el 18 de enero de 1994, lo reparó y lo entregó el mismo día a la querellante-recurrida. Al día siguiente, ésta presentó una enmienda a la querella adicionando a dos hijas menores en la solicitud de daños y exponiendo que agotó los días de licencia por enfermedad en su trabajo y que perdió su anterior empleo debido a los defectos de su vehículo.*

*El 5 de febrero de 1994 repararon, dentro de la garantía, el acondicionador de aire del vehículo que no estaba enfriando.*

*Luego, el 2 de marzo de 1994, un técnico automotriz de D.A.C.O inspeccionó el vehículo e hizo las siguientes observaciones:*

*"(1) Reflejó "halones" corriendo a una velocidad de entre 35 y 45 millas y al subir cuestas el fallo se acentuaba más.*

*(2) Ruido en la parte trasera."*

El 29 de marzo de 1994 la vendedora recibió el vehículo y le reemplazó nueve piezas. No obstante, el 22 de abril del mismo año el técnico de D.A.C.O. inspeccionó y probó el vehículo y determinó que continuaban existiendo los mismos problemas de *"halones a una velocidad de entre 25 y 45 millas en áreas planas y cuestas".* El 10 de junio de 1994 volvió la recurrida a reclamar a la recurrente por razón de los *"halones"* y además, por alegados defectos en el acondicionador de aire. La recurrida recibió y devolvió el vehículo el mismo día.

El 3 de agosto de 1994 la querellante recurrida retornó otra vez ante la vendedora-recurrente expresando que el vehículo continuaba dando los *"halones".* Indicó, además, que sentía *"ruido"* en los *"shock-absorbers";* no podía cambiar a *"drive";* daba golpes al arrancar; se apagaba y no prendía y agotaba la batería. Ante esto, la vendedora recibió el vehículo y reemplazó lo siguiente:

*"(1) puntos del motor*

*(2) sensor eléctrico*

*(3) "punge control valve"*

*(4) "shock-absorbers"*

*(5) batería."*

Además, ajustó y/o cotejó el sistema de carga y los contactos eléctricos.

Más tarde, la vendedora y distribuidora advinieron en conocimiento de que los vehículos de marca y modelo similar al comprado por la querellante-recurrida, habían sido fabricados con un deficiencia en uno de sus componentes electrónicos, lo cual con toda probabilidad ocasionaba el problema de los denominados halones, aducido por la recurrida. Procedieron a reparar la pieza electrónica el 4 de octubre de 1994, interviniendo los mecánicos de la vendedora y de la distribuidora. Sin embargo, al verificar y reemplazar los líquidos del vehículo como parte del servicio de mantenimiento preventivo, descubrieron que la gasolina que tenía depositada la unidad en ese momento estaba altamente contaminada al igual que el refrigerante del radiador y los reemplazaron.

El 24 de octubre de 1994, día en que fue celebrada la vista administrativa, el técnico automotriz de D.A.C.O., acompañado de otro técnico de Mitsubishi, inspeccionó el automóvil y realizó lo que denominó una prueba de carretera. Informó que el vehículo no presentó ningún fallo de motor ni halones.

D.A.C.O. concluyó que, como consecuencia de los defectos del vehículo, la querellante tuvo que llevar el mismo a reparar en por lo menos diez (10) ocasiones, por lo que sufrió múltiples perjuicios al tener que ausentarse de su trabajo para resolver tales inconvenientes. Que en una de esas ocasiones, el vehículo estuvo cuatro (4) días en el local de la vendedora, tiempo en que se le privó a la querellante de su uso y disfrute. Que desde los dos meses de comprado el automóvil, la compradora estuvo reclamando de manera reiterada y consistente el arreglo de éste y así estuvo haciéndolo por un período de año y medio y no fue hasta el final, al reemplazar y/o ajustar una pieza electrónica con defectos de fábrica, que pudieron repararlo.

Como resultado de lo anterior, determinó que la vendedora y distribuidora querelladas cumplieron de manera negligente con su obligación de reparar dentro de la garantía los defectos del vehículo de la compradora-querellante, aquí recurrida, ocasionándole daños y perjuicios a ésta. Consideró de aplicación el Artículo 1054 del Código Civil. ■

Concluyó, además, que la prueba desfilada no demostró, como insinuaron las querelladas, que la causa de los halones fuese la gasolina contaminada y el pobre mantenimiento dado a la unidad, sino que esto fue una causa adicional que contribuyó a agravar más el problema al existir el defecto electrónico en el vehículo.

Fundamentó su determinación en el hecho de que la vendedora, inicialmente, así como la distribuidora, posteriormente, no hicieron un esfuerzo diligente y riguroso para detectar la causa o causas de los halones que manifestaba el motor del vehículo, a pesar de que luego de cada reparación continuaba con la misma deficiencia.

Tomó en consideración el hecho de que a pesar de los defectos, el vehículo había recorrido veintidos mil ochocientas una (22,801) millas; que la vendedora y distribuidora en todo momento atendieron las reclamaciones; que el día de la vista administrativa el vehículo funcionó perfectamente y que los defectos no cualificaban como vicios ocultos, lo que hacía improcedente la rescisión del contrato solicitada por la querellante-recurrida.

Como resultado de todo lo anterior, ordenó a las recurrentes Charlie Auto Sales, Corp., h/n/c Hyundai de Bayamón y Mitsubishi Motors Sales of Caribbean, Inc. el pago solidario a la querellante-recurrida, Rosa Hernández Medina, de la suma de mil ($1,000) dólares, más el interés legal vigente, a partir de la fecha de la notificación de la resolución.

Inconformes, los recurrentes solicitaron reconsideración. Las mociones a tales efectos fueron rechazadas de plano. Oportunamente, acudió Charlie Auto Sales, Corp. al entonces Tribunal Superior de San Juan, hoy Sala Superior del Tribunal de Primera Instancia, foro que trasladó el caso a este Tribunal, en cumplimiento de la Ley Núm. 248, aprobada el 25 de diciembre de 1995. [3]

En su recurso de revisión los recurrentes señalan los siguientes tres (3) errores:

*"(1) La determinación de que los halones producidos en el vehículo de la querellante responden a un defecto, no está sostenida por la evidencia sustancial presentada durante la vista administrativa.*

*(2) Erró D.A.C.O. al otorgarle a la querellante compensación por daños y perjuicios para lo cual no está autorizado por ley ni la evidencia presentada justificaba dicha compensación.*

*(3) Erró el D.A.C.O. al ordenar a la compareciente a satisfacer solidariamente el pago de daños."*

Expedimos el auto y confirmamos la resolución recurrida. Veamos.

## II

En lo que respecta al primer error, es norma reiterada que las determinaciones hechas por las agencias administrativas gozan de una presunción de corrección y merecen la mayor deferencia por parte de los tribunales. Ello es así, a menos que se demuestre parcialidad o abuso de discreción. *Santos v. Municipio de Comerío*, ___ D.P.R. ___ (1996, **96 J.T.S. 170**; *Maisonet Felicié v. Corp. Fondo del Seguro del Estado*, ___ D.P.R. ___ (1996), **96 J.T.S. 169**; *Mangual Vélez v. Comisión Estatal de*

*Elecciones,* ___ D.P.R. ___ (1995), **95 J.T.S. 121.**

Los organismos administrativos cuentan con la experiencia y conocimientos altamente especializados sobre los asuntos que se le encomiendan y resuelven de día en día. Por esta razón, en casos donde se solicita la revisión de una resolución administrativa, los tribunales apelativos deben proceder en forma cuidadosa al pasar juicio sobre la prueba presentada y utilizada por la agencia para fundamentar sus conclusiones, ya que la revisión se limita a determinar si hubo actuaciones arbitrarias, caprichosas, o de forma irrazonable, de tal modo que pueda concluirse que la agencia cometió un abuso de discreción. *San Vicente Frau v. Policía de Puerto Rico,* ___ D.P.R. ___ (1996), **96 J.T.S. 148;** *La Facultad para las Ciencias Sociales Aplicadas, Inc. v. C.E.S.,* ___ D.P.R. ___ (1993), **93 J.T.S. 88;** *Rubin Ramírez v. Trías Monge,* 111 D.P.R. 481 (1981); *Henríquez v. Consejo de Educación Superior,* 120 D.P.R. 194 (1987).

A tenor de lo anterior, en el caso de *Santos v. Municipio de Comerío, supra,* nuestro Tribunal Supremo estableció lo siguiente:

*"Los tribunales apelativos deben ser cautelosos al intervenir con la apreciación de la prueba que realice dicho organismo cuando sus determinaciones se encuentren fundamentadas por prueba amplia y **sustancial**. En estos casos, la revisión judicial debe limitarse a determinar si el referido foro actuó de manera arbitraria o ilegal, o en forma tan irrazonable que su actuación constituya un abuso de discreción."* (Citas omitidas.) Énfasis suplido.

La regla de la evidencia sustancial tiende a evitar que mediante la revisión judicial se sustituya el criterio del tribunal por el de la agencia administrativa cuya actuación se intenta revisar. *López v. Junta de Planificación,* 80 D.P.R. 646 (1958); *Hilton Hotels v. Junta de Salario Mínimo,* 74 D.P.R. 670 (1953). La evidencia sustancial se considera menos que la preponderancia de la evidencia. D. Fernández, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme,* Editorial Forum, 1993, pág. 531. Sin embargo, las conclusiones e interpretaciones deben ser razonables y consistentes con el propósito legislativo. *Metropolitana, S.E. v. Administración de Reglamentos y Permisos,* **95 J.T.S. 10** (1993), ___ D.P.R. ___, *La Facultad para las Ciencias Sociales Aplicadas, Inc. v. C.E.S., supra.*

De otra parte, los señalamientos ante los tribunales apelativos tienen que sustentarse con la prueba adecuada. Las meras alegaciones no son suficientes, así como tampoco las conjeturas. *Pueblo v. López Guzmán,* ___ D.P.R. ___ (1992), **92 J.T.S. 142;** *Pueblo v. Dones,* 106 D.P.R. 303 (1977); *Pueblo v. Pacheco,* 93 D.P.R. 285 (1961).

La parte recurrente no ha presentado ninguna prueba que pueda llevar a este tribunal a concluir que el organismo administrativo haya abusado de su discreción. Sus argumentos no derrotan la presunción de regularidad y corrección de la cual gozan las determinaciones administrativas y ésta debe ser respetada mientas la parte que las impugne no produzca suficiente evidencia para derrotarlas. Por lo tanto, debemos sostener las conclusiones hechas por el D.A.C.O. El error imputado no se cometió.

En el segundo error, la parte recurrente cuestiona la capacidad del Departamento de Asuntos del Consumidor para imponer daños y perjuicios.

La ley habilitadora de dicho Departamento, ■ le concede facultad para investigar todas las querellas presentadas por los consumidores y para poner en vigor, implementar y vindicar sus derechos a través de una estructura de adjudicación administrativa de plenos poderes para adjudicar las querellas que traigan ante su consideración y conceder los remedios pertinentes, conforme a derecho. La ley concede al Secretario del D.A.C.O. la delegación de sus facultades en aquel funcionario que considere cualificado para ejercer las mismas.

No hay nada en la citada ley que impida o prohiba al D.A.C.O. la imposición de daños y perjuicios en casos como el de autos.

En el caso de *Aguilú v. Parking System,* 122 D.P.R. 261 (1988), se reconoció el derecho del consumidor de reclamar daños y perjuicios, resolviendo el Hon. Tribunal Supremo de Puerto Rico,

que tanto el D.A.C.O. como el foro judicial tienen jurisdicción concurrente. Véase, además, *Cintrón v. E.L.A.,* 127 D.P.R. 582, **90 J.T.S. 128** (1990).

El Departamento recurrido basó su determinación de daños en lo dispuesto en el artículo 1054 de nuestro Código Civil ▆ el cual dispone:

*"Quedan sujetos a la indemnización de los daños y perjuicios causados los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad y los que de cualquier modo contravinieren al tenor de aquéllas."*

La amplia prueba no controvertida en el caso de autos presentó un patrón claro de negligencia por parte de la vendedora y de la distribuidora, consistente en hacer reparaciones continuas que no conducían sino a empeorar las condiciones del vehículo, hasta que se enteraron de la condición de un defecto en la fabricación en ese y otros modelos similares; defecto, que con un mínimo de esfuerzo adicional lo hubiesen conocido, sin los inconvenientes sufridos por la recurrida durante más de un año. Por ello, procedió correctamente el D.A.C.O. al imponer daños en la forma en que lo hizo. El error no fue cometido.

En lo que respecta al tercer error, la parte recurrente plantea que el D.A.C.O. erró al imponerles responsabilidad solidaria en el pago de daños.

La doctrina prevaleciente en cuanto a vehículos de motor con defectos, como en el presente caso, es la de responder en forma solidaria al consumidor, tanto el vendedor como el fabricante y el distribuidor. *Ferrer v. General Motors,* 100 D.P.R. 246 (1971). Véase, además, el Reglamento del Departamento de Servicios del Consumidor Núm. 1560, aprobado el 23 de mayo de 1972, conocido como: *"Reglamento para Regular las Garantías que se Deben Conceder en la Venta de Vehículos de Motor Nuevos y Usados".* Este cuerpo reglamentario contempla la responsabilidad solidaria entre el vendedor, el distribuidor y el fabricante ante el consumidor en casos de vehículos nuevos.

Conforme a lo anterior, el hecho de que D.A.C.O. haya impuesto responsabilidad solidaria a la parte querellada-recurrente, compuesta por el vendedor y el distribuidor de fábrica solamente, en nada impide que dicha parte, de así considerarlo conveniente, pueda instar una acción ordinaria contra el fabricante.

Evidentemente, parte de la justicia que merece el consumidor, frente a los grandes intereses, estriba en que el D.A.C.O. pueda atender las querellas con prontitud y en forma eficaz, estableciendo una responsabilidad solidaria en los casos apropiados, sin menoscabo de que, de existir alguna controversia entre las partes, sobre en quién recae la responsabilidad, ello pueda ser litigado en un pleito independiente, sin causarle más daños al consumidor, que está prácticamente indefenso ante la burocracia de las grandes empresas.

## III

Por los fundamentos esbozados, expedimos el auto y confirmamos la resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 97 DTA 102**

**1.** Debidamente notificada a las partes el 23 de diciembre de 1994.

**2.** 31 L.P.R.A. sección 3108.

**3.** Artículo 9.004. Dicho artículo preceptúa que todos los recursos de revisión de índole administrativa pendientes de resolver en el Tribunal de Primera Instancia al 24 de junio de 1996 debían ser referidos al Tribunal de Circuito de Apelaciones.

**4.** Ley Núm. 5 de 23 de abril de 1973, 3 L.P.R.A. sec. 341 y sig.

**5.** 31 L.P.R.A. sec. 3018.