RAMÓN FERRER DELGADO, demandante y recurrente, *v.* GENERAL MOTORS CORPORATION, VAILLANT MOTORS CORPORATION y CABRERA HERMANOS, INC., demandadas y recurridas.

*Número:* R-70-34        *Resuelto:* 22 de noviembre de 1971

*Gilberto Padró Díaz,* abogado del recurrente; *Rivera Zayas, Rivera Cestero & Rúa* y *Víctor R. González Mangual,* abogados de la General Motors Corporation; *Hartzell, Fernández, Novas & Ydrach* y *A. Santiago Villalonga,* abogado de Vaillant Motors Corporation; *Joaquín Lago Padín,* abogado de Cabrera Hermanos, Inc.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Ramón Ferrer Delgado, el recurrente, presentó una demanda que denominó "acción civil" contra General Motors Corporation, Vaillant Motors Corp. y Cabrera Hermanos, Inc., las recurridas en este caso. La demanda original fue presentada en 6 de septiembre de 1967. Alegó el demandante que el 26 de octubre de 1965 le compró un automóvil Oldsmobile, nuevo, del año 1966, a Cabrera Hermanos, Inc., agentes o representantes en Arecibo de Vaillant Motors Corp. y de General Motors Corp.; que el precio de compra fue $9,365.00; que el automóvil le fue vendido con defectos en el tren delantero del mismo por lo cual gastaba en forma excesiva las llantas delanteras por su lado interior hasta el extremo de que habiendo corrido 22,000 millas había gastado 12 llantas; y que las demandadas no han podido corregir dicho defecto. Solicitó se le devuelva el precio que pagó por el automóvil y se le indemnicen daños. Puso a disposición de las demandadas el referido vehículo.

La prueba desfilada en el juicio demostró que en efecto las llantas delanteras del vehículo había que reemplazarlas después de aproximadamente cada 5,000 millas que recorriera el automóvil; que dicho automóvil fue llevado en varias ocasiones a los talleres de cada una de las recurridas para que se corrigiera esta situación y en todas las ocasiones las recurridas se limitaron a enviar el automóvil a distintos talleres para que se le alineara el tren delantero pero ninguna de ellas examinó el vehículo en su propio taller para determinar si el vehículo tenía algún defecto que ocasionara el desgaste excesivo de las llantas. En cada una de las ocasiones el automó-

·vil fue devuelto al recurrente pero las llantas continuaban gastándose en la forma antes dicha.

Dos de estas llantas fueron introducidas en evidencia y examinadas por testigos peritos de las partes. La superficie de rodaje de cada una de las llantas estaba más gastada en los bordes que en el centro. El borde interior de cada llanta estaba más gastado que el borde exterior. El perito del recurrente, a base del desgaste que presentaban las llantas, concluyó que el mismo fue causado por algún defecto del vehículo. Opinó que el desgaste no fue causado por inflación baja de las llantas, pues los bordes interiores tenían más desgaste que los bordes exteriores.

El perito en mecánica de las recurridas, quien a su vez es gerente de servicio de General Motors, en cambio, declaró que el desgaste fue causado por inflación baja, ya que los bordes de las gomas tenían más desgaste que el centro. Es aparente que este testigo hizo caso omiso del hecho de que los bordes interiores de las llantas estaban más desgastados que los bordes exteriores. El demandante declaró él inflaba las llantas con la presión de aire indicada por los vendedores Cabrera Hermanos. Señaló el perito de las recurridas, que el lado exterior de una de las llantas tenía golpes y señales de haber rozado con un cantón o con aceras y que esto contribuye a desalinear el tren delantero del vehículo. Advirtió que los hábitos de conducir pueden contribuir al desgaste de las llantas. Nada dijo—ni se le preguntó—en cuanto a si el desgaste pudo haber sido causado o afectado por algún defecto en el vehículo. Se limitó a indicar que hay muchos factores que pueden ocasionar desgaste de las llantas.

El tribunal sentenciador declaró sin lugar la demanda a base de las siguientes conclusiones de hechos y de derecho: ·Ninguno de los talleres de alineación devolvió el automóvil indicando que no podía ser alineado por defectos en el tren delantero. Las llantas introducidas en evidencia fueron usadas con presión baja y habían sido rozadas con obstáculos

tales como encintados, lo que afecta el desgaste de las gomas. No se probó que existiera defecto alguno en el tren delantero. En acciones de daños por negligencia debe demostrarse que hubo negligencia; que el daño fue causado por negligencia o impericia del demandado, y aquí no se demostró tal relación causal, ni que las demandadas faltaron a sus obligaciones contractuales, ni se probaron vicios ocultos, o defectos redhibitorios.

El tribunal de instancia cometió error en la apreciación de la prueba y en la aplicación del derecho a los hechos del caso.

Es cierto que ningún taller devolvió el vehículo sin alinear aduciendo que el mismo tenía algún defecto, pero es igualmente cierto que ningún taller dijo que el automóvil *no* tenía defectos. La conclusión al efecto de que el desgaste de las llantas provino de rodarlas con presión baja se basa en el testimonio del perito de las recurridas, quien hizo caso omiso del hecho de que había más desgaste en el borde interior de las mismas que en el exterior. Nos parece más razonable y persuasiva la opinión del perito del recurrente en el sentido de que ese desgaste irregular, en un solo lado de las llantas, no podía ser causado por inflación baja de las llantas. En cuanto a los hábitos de conducir como factor causal del desgaste de las llantas, cabe señalar que no hubo prueba afirmativa en tal sentido, sino que se mencionó como una mera posibilidad. Contra esta posibilidad se opone el hecho de que el recurrente había comprado a Cabrera Hermanos cuatro automóviles Oldsmobile en años anteriores—desde el año 1949—y dicha recurrida no adujo prueba de que el recurrente hubiese tenido un problema similar de desgaste excesivo e irregular de las llantas de esos otros cuatro vehículos. Es improbable que el recurrente comenzara a adquirir malos hábitos de guiar desde que compró el vehículo objeto de este litigio.

También cometió error el tribunal al concluir que no se probó que el vehículo tuviera algún defecto o vicio oculto o

redhibitorio o que las recurridas imcumplieran sus obligaciones contractuales. Estas conclusiones serían correctas si a casos como el presente se aplicaran las normas tradicionales del peso de la prueba y si las cláusulas del contrato de venta relativas a la garantía, en caso de duda, se interpretasen a favor de la parte que lo redactó.

Es cierto que el recurrente no probó qué pieza o piezas estaban defectuosas o incorrectamente ajustadas, o cuáles motivaron el desgaste excesivo de las llantas. Generalmente el comprador de un vehículo no es un perito en mecánica automotriz, sino que por el contrario son los que fabrican los vehículos y sus agentes los que lo. son o deben serlo. Es cierto que las recurridas hicieron esfuerzos para corregir la situación, pero eso no basta. Además de lo prescrito en la ley para casos de compraventa—lo que mencionaremos más adelante—en este caso hay una garantía escrita del fabricante del vehículo que es parte del contrato de venta de un automóvil nuevo. Dicha garantía es idéntica o similar en todo contrato de venta de vehículos nuevos y la misma ha sido objeto de interpretación en innumerables casos.

La garantía extendida por el fabricante del vehículo aquí concernido expresa, en lo pertinente, que la Oldsmobile Division of General Motors Corporation, como fabricante, garantiza. que cada vehículo nuevo, incluyendo el equipo y accesorios, menos las llantas, fabricado o suplido por la Oldsmobile Division y vendido por un vendedor autorizado de la Oldsmobile, está libre de desperfectos en su material y fabricación. La garantía, desde luego, es exigible siempre que se utilice el vehículo en forma normal. (*"Free from defects in material and workmanship under normal use and service."*) Sigue expresando dicha garantía que la misma se limita a la reparación o reemplazo de las piezas que resulten defectuosas. Las demás disposiciones de la garantía no son aquí pertinentes.

La interpretación que muchos tribunales han dado a dichas cláusulas y que a nuestro juicio constituye la interpretación

más razonable y justa es la expresada en el caso normativo de *Allen* v. *Brown*, 310 P.2d 923 (1957), citado con aprobación en *Rose* v. *Chrysler Motors Corporation*, 212 Cal. App.2d 755; 99 A.L.R.2d 1411, 1418 (1963).

El razonamiento del Tribunal en dicho caso de *Allen* v. *Brown*, puede resumirse como sigue:

"Lo que ocurre generalmente es que cuando el comprador de un automóvil nuevo descubre algún defecto en el mismo, se lo lleva al vendedor que se lo vendió. Normalmente el comprador desconoce la causa del defecto y él confía en que el vendedor y sus mecánicos encontrarán y corregirán dicho defecto. El vendedor, si es necesario, consultará con los expertos del fabricante.

Sería poner una carga injusta sobre el comprador, quién generalmente es lego en mecánica, que sea él quién descubra exactamente qué pieza o piezas del vehículo son las defectuosas o las que causan el problema. Incumbe al vendedor ("dealer") encontrar la causa del problema y reponer, libre de costo a tenor con la garantía, la pieza o piezas defectuosas. Si no se logra el arreglo del vehículo dentro de un tiempo razonable se hace operativa la garantía."

En igual sentido véanse *Fox* v. *R. D. McHay Motor Co.*, 366 P.2d 297; *General Motors Corp.* v. *Earnest*, 184 So.2d 811; *Cox Motor Car Co.* v. *Castle*, 402 S.W.2d 429. Véase además: *Construction and Effect of Standard New Motor Vehicle Warranty*, 99 A.L.R. 1419; *Products Liability and the Automobile Industry; Much Ado About Nothing*, Wisc. L. Rev. (1968) pág. 83; *Defective Automobiles and the N.C.C.*, 18 Clev. St. L. Rev. 527.

■ En síntesis, en casos como el presente, el comprador solo viene obligado a demostrar, como aquí lo demostró el demandante, que el vehículo que compró no funciona normalmente y que la parte demandada tuvo oportunidad de corregir el defecto pero no lo corrigió o no pudo corregirlo. La parte demandada solo queda exenta de responsabilidad si como defensa afirmativa demuestra—lo que aquí no hizo— que el funcionamiento anormal es causado por actos del

demandante. Estas determinaciones están acordes con lo resuelto en *Negrón* v. *Caribe Motors*, Sentencia de 15 de junio de 1970, Ref. Col. Abog. 98.

■ Veamos ahora cual es el derecho aplicable a estos casos en que se venden automóviles y otros aparatos y máquinas que resultan defectuosos. Se trata de contratos de compraventa de bienes muebles. Luego, le son aplicables en general los artículos del Código Civil que reglamentan la compraventa de bienes muebles, los cuales se hallan en el Título IV del Libro IV del Código Civil, Arts. 1334 al 1427, y regulan la compraventa en general. 31 L.P.R.A. secs. 3741–3961. Como se trata en particular de un caso que envuelve el saneamiento de la cosa vendida, por motivo de vicios ocultos, le son aplicables especialmente los Arts. 1350, 1363 y 1373 al 1375, inclusives, del Código Civil. 31 L.P.R.A. secs. 3801, 3831 y 3841–3843 *Berríos* v. *Courtesy Motors*, 91 D.P.R. 441, 444 *in fine* (1964).

De los contratos onerosos traslativos del dominio es la compraventa—el cambio de cosa por dinero—el más frecuente y representativo. Es el más detenidamente regulado por el Código. (¹)

■ En virtud del Art. 1350 el vendedor está obligado a la entrega y saneamiento de la cosa vendida. 31 L.P.R.A. sec. 3801. No basta que el vendedor entregue la cosa; es preciso que asegure al comprador la posesión pacífica y útil de la misma. El propósito o causa de la venta para el comprador es adquirir la cosa para servirse de ella y dicho propósito dejaría de realizarse si una vez hecha la entrega el comprador

---

(¹) La importancia de la compraventa de cosas muebles es tal en el Derecho privado moderno que ha trascendido de los ámbitos nacionales al campo internacional. Por ello ha surgido la conveniencia de una unificación internacional del Derecho aplicable a dicho contrato. El Instituto Internacional para la Unificación del Derecho Privado, de Roma, inició los trabajos de redacción de un proyecto de Ley uniforme sobre el particular trabajos que cristalizaron en el proyecto de Ley Uniforme de 1956, sometido a la consideración de los gobiernos de diversos países. Castán, *Derecho Civil Español, Común y Foral*, Tomo 4, Novena ed. revisada (1969), pág. 57.

se ve privado de la cosa o imposibilitado de aplicarla a los usos que le son propios. De aquí surge la obligación de garantía que tiene el vendedor. El Código llama obligación de *saneamiento* (Art. 1350) a la que en Derecho extranjero y en la doctrina se le llama *garantía*. Las dos formas tradicionales de dicha garantía consisten en garantizar la posesión pacífica de la cosa vendida y en la obligación de sanear los vicios o defectos ocultos que tuviere.

■ Como se sabe, la obligación de saneamiento existe en casos de evicción y en casos de vicios ocultos.. Evicción (del latín *evincere*) quiere decir vencer en juicio y significa, en este contexto, la pérdida de un derecho como consecuencia de una sentencia judicial. La evicción, que es un hecho, produce, en materia de compraventa, el efecto jurídico de la obligación de saneamiento. Como el presente no es un caso de saneamiento por evicción, sino de saneamiento por vicios ocultos, no es necesario entrar en otros pormenores sobre aquella institución jurídica.

■ Como dijimos, la otra obligación de saneamiento surge cuando hay defectos o vicios ocultos en la cosa vendida. Estos vicios pueden ser *jurídicos*, en cuyo caso consistirían en una limitación del derecho transmitido (como por ejemplo, una servidumbre no aparente en caso de un inmueble) o pueden ser de *hecho*, como cuando se trata de defectos intrínsecos de la cosa vendida. A los vicios ocultos también se les denomina *redhibitorios* (de *redhibere*, devolver) porque pueden deshacer la venta.

■ La doctrina preconiza que para que puedan ser objeto de saneamiento los vicios ocultos éstos (1) no deben ser conocidos por el adquirente, (2) el defecto debe ser grave o suficientemente importante para hacer la cosa impropia para el uso a que se le destina o que disminuya de tal modo este uso que, de haberlo conocido el comprador, no la habría comprado o habría dado menos precio por ella, (3) que sea preexistente a la venta y (4) que se ejercite la acción en el plazo

legal, que es el de seis meses contados desde la entrega de la cosa vendida. Art. 1379 del Código. 31 L.P.R.A. sec. 3847. En Puerto Rico, así como en España, dicho plazo ha sido extendido jurisprudencialmente en el sentido de que el plazo de seis meses se cuenta, no desde la fecha de la perfección del contrato, sino desde el día en que se interrumpieron las gestiones de inteligencia entre las partes. *Casa Jaime Corp.* v. *Castro*, 89 D.P.R. 702, 704 (1963).

En los casos como el de autos, de saneamiento por defectos ó vicios ocultos, el Código dispone que el comprador podrá optar entre desistir del contrato, abonándosele los gastos que pagó, o podrá rebajar una cantidad proporcional del precio, a juicio de peritos. Art. 1375. 31 L.P.R.A. sec. 3843. También dispone dicho artículo que si el vendedor conocía los vicios o defectos ocultos de la cosa vendida y no los manifestó al comprador, tendrá éste la misma opción y además se le indemnizará por los daños y perjuicios si optare por la rescisión. En el caso de autos ni se alegó ni se probó que el vendedor conociese los vicios o defectos ocultos.

De acuerdo con lo anterior el recurrente tiene derecho a que se le reembolse el precio pagado por el automóvil y los gastos en que necesariamente incurrió por motivo de los defectos o vicios del mismo (los $450.00 que gastó comprando llantas adicionales) pero no tiene derecho a los $15,000.00 que reclama por concepto de daños y perjuicios. También tiene derecho a que se le reembolsen las costas y a una suma razonable para honorarios de abogado. Resolvemos que los gastos extraordinarios por llantas están incluidos en el concepto de "gastos" del citado Art. 1375 pero, desde luego, no así los que reclama por daños y perjuicios. Estos últimos sólo procederían, como antes se ha señalado, si el vendedor hubiese conocido los vicios ocultos y no los hubiese manifestado al comprador. [2]

---

[2] En *Fuentes* v. *Hull Dobbs Co.*, 88 D.P.R. 562 (1963), la vendedora conocía el vicio oculto y allí concedimos daños.

■ La acción del recurrente no está prescrita ya que a la fecha de su presentación no habían pasado más de seis meses desde que se interrumpieron las gestiones de inteligencia entre las partes. *Casa Jaime Corp.* v. *Castro*, supra, y además el contrato de garantía extendido por el fabricante no había expirado al instarse la acción.

■ Sobre estos contratos y garantías impresos que se le entregan al comprador de un automóvil o una máquina, debe recordarse lo siguiente: Si bien el Código Civil es supletorio a lo convenido por las partes, siempre que éstas no contraten en violación de la ley, al interpretar y aplicar dichos contratos y sus garantías tendremos en cuenta que esos son contratos de adhesión, en los cuales el comprador tiene muy poco o nada que decir. Su consentimiento a ellos, una vez hecha la decisión de comprar determinada marca y modelo del automóvil, o de la máquina de que se trate, es casi ninguno. Véanse *Rosario* v. *Atl. Southern Ins. Co. of P.R.*, 95 D.P.R. 759, 765 (1968); *Protane Gas Co. of P.R.* v. *Ramos*, 95 D.P.R. 419, 421 (1967); *Barreras* v. *Santana*, 87 D.P.R. 227, 232 (1963); *Zequeira* v. *CRUV*, 83 D.P.R. 878, 880–881 (1961); *Maryland Cas'y Co.* v. *San Juan Racing Assoc. Inc.*, 83 D.P.R. 559, 566 (1961).

■ ¿Cuál o cuáles de las recurridas deben responder al recurrente en este caso? La norma general es que incumbe a la parte vendedora reembolsar el precio. Pero la acción también procede contra el fabricante, en virtud de la garantía expresa antes mencionada. Véanse *Product Defect-Privity*, 16 A.L.R.3d 683; *Standard New Motor Vehicle Warranty*, 99 A.L.R.2d 1419. Si en nuestra jurisdicción se admite una acción de daños y perjuicios contra el fabricante de un producto defectuoso que cause daños, *Mendoza* v. *Cervecería Corona Inc.*, 97 D.P.R. 499 (1969), con mayor razón debe prosperar una acción contra el fabricante de un automóvil para obtener el reembolso del precio pagado.

■ Aparte de la vendedora y del fabricante se demandó a la distribuidora en Puerto Rico de los automóviles Olds-

mobile, Vaillant Motors Corporation. Esta última fue intermediaria entre General Motors Corp. y Cabrera Hermanos, Inc., en la introducción a Puerto Rico del vehículo vendido al recurrente. Bajo circunstancias parecidas en *Barth* v. *B. F. Goodrich Tire Company*, 71 Cal. Rptr. 306 (1968), se responsabilizó a un intermediario o mayorista por defectos de una llanta. Aunque ese caso está predicado en la doctrina de responsabilidad absoluta, pues hubo daños al reventarse una llanta, igual criterio debe aplicarse cuando, como en el caso de autos, un intermediario introduce un producto defectuoso que él no puede arreglar. Las tres recurridas son solidiariamente responsables ante el recurrente.

Toda vez que Vaillant Motors Corp. y Cabrera Hermanos Inc., separadamente entablaron demandas contra co-parte contra General Motors Corp. o su subsidiaria Foreign Distributors División of General Motors Corp. u Overseas División of General Motors; y General Motors Corp., o su subsidiaria entabló reconvenciones separadas contra Vaillant Motors Corp. y contra Cabrera Hermanos, Inc., y el tribunal de instancia no hizo determinaciones de hecho ni conclusiones de derecho en cuanto a dichas demandas contra co-parte y dichas reconvenciones no tenemos elementos de juicio para distribuir la suma de la sentencia entre las distintas recurridas. Las demandadas-recurridas podrán pactar entre sí, o dilucidar en pleito separado, quién le pagará cuánto a quién, entre ellas. La obligación que aquí fijamos para con el demandante-recurrente es solidaria contra las tres demandadas y aquél puede hacerla efectiva sin esperar a que las demandadas lleguen a un arreglo entre sí o a que litiguen el asunto.

*Se revocará la sentencia dictada en este caso por el Tribunal Superior, Sala de San Juan, en 2 de enero de 1970, se declarará la demanda con lugar y se dictará sentencia de acuerdo con lo antes dicho.*

El Juez Presidente, Señor Negrón Fernández, no intervino.