# 97 DTA 115

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE SAN JUAN

AUTORIDAD DE ENERGIA ELECTRICA
Patrono-Recurrido

v.

UNION DE TRABAJADORES DE
LA INDUSTRIA ELECTRICA Y RIEGO
Unión-Recurrente

Núm KLRA-96-00301

San Juan, Puerto Rico, a 9 de mayo de 1997

Panel integrado por su Presidenta, la Juez Alfonso de Cumpiano

y los Jueces Miranda De Hostos y Giménez Muñoz

Giménez Muñoz, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

En un procedimiento de clarificación de unidad apropiada que presentara la Autoridad de Energía Eléctrica de Puerto Rico (A.E.E.), la Junta de Relaciones del Trabajo (Junta) determinó que las plazas de Operadores del Sistema de Distribución deben ser excluidas de la unidad representada por la Unión de Trabajadores de Industria Eléctrica y Riego. Por considerar que la Junta violó las normas establecidas para resolver este tipo de casos, recurre la unión ante nos.

### I

La organización obrera, la Unión de Trabajadores de la Industria Eléctrica y Riego (UTIER), es la representantes sindical de los empleados de operación y conservación de la A.E.E., corporación pública que produce, vende y distribuye energía eléctrica.

Los puestos de Operadores del Sistema de Distribución I y II, del Despacho de Distribución de la A.E.E., formaban parte de la unidad apropiada que representa la unión recurrente, según el convenio colectivo negociado. El 5 de abril de 1990 cinco operadores de distribución, mediante carta dirigida al Sr. José R. Cobián, Director de Recursos Humanos de la A.E.E., solicitaron una investigación y evaluación de sus plazas, alegando que sus plazas eran análogas a las de los Despachadores de Area y como éstos habían sido excluidos de la unidad apropiada, formularon igual solicitud de exclusión. Indicaron, entre otras razones, que sus funciones les llevaban a hacer recomendaciones que pueden afectar tanto a personal gerencial como unionado, lo cual presenta un conflicto de intereses, coordinan asuntos confidenciales con ejecutivos de la gerencia y de seguridad interna y que sus acciones y decisiones son ejercidas generalmente con criterio independiente.

El 12 de junio de 1991 la A.E.E. sometió a la Junta la petición para clarificación, alegando que los operadores *"realizan funciones de índole confidencial, de supervisión y que están íntimamente ligados a gerencia, por lo que deben estar excluidos de la unidad apropiada que representa la UTIER"*.

El 4 de diciembre de 1991 una Oficial Examinadora emitió un Informe de Recomendaciones a la Junta recomendando la exclusión de los puestos de Operadores del Sistema de Distribución Eléctrica de la unidad apropiada. La Junta, al igual que lo recomendara la Oficial Examinadora, excluyó los puestos de la unidad apropiada. No obstante, el entonces Tribunal Superior, revocó la decisión mediante sentencia emitida el 14 de julio de 1993. Devuelto el caso y celebrada vista ante un Juez Administrativo, el 29 de junio de 1995, éste emitió su informe y concluyó que los puestos presentaban un conflicto de intereses con otros empleados y debían ser excluidos de la unidad apropiada. La Junta

acogió las recomendaciones del juez administrativo, excluyó los puestos de la unidad apropiada que representa la UTIER, y dispuso que los puestos *"podrán conformar una unidad apropiada separada en la cual no se incluya otro personal con el cual puedan tener conflicto de intereses"*.

Presentada una moción de reconsideración por la UTIER, la Junta la declaró sin lugar el 29 de agosto de 1996, notificada el 4 de septiembre de 1996.

Por estar en desacuerdo con la acción tomada, acude ante este Tribunal de Circuito de Apelaciones la UTIER y señala la comisión de error al emitir la decisión y orden en violación a las normas establecidas y en ausencia de ciertos elementos específicos que requiere nuestro ordenamiento.

Por resolución que emitiéramos el 11 de febrero de 1997, expedimos el auto solicitado.

## II

De entrada, es necesario indicar que la autoridad estatutaria para definir una unidad apropiada de contratación colectiva reside en la Junta. El inciso 2 del Artículo 5 de la Ley Núm. 130 de 8 de mayo de 1945, según enmendada, 29 L.P.R.A. sec. 66(2), expresa *"que la Junta decidirá en cada caso la unidad apropiada, a los fines de la negociación colectiva"*. La ley, sin embargo, no contiene disposición sobre el procedimiento de clarificación de unidad apropiada. Tampoco existe reglamentación para el procedimiento, siendo el mismo un diseño elaborado por la Junta. Se trata de un calco del mecanismo federal ▮ que allá se ha utilizado para añadir a una unidad apropiada ciertos empleados que al momento de formularse la petición no forman parte de ésta, pero que debían pertenecer a la misma porque comparten una misma comunidad de intereses. *Pérez Maldonado v. Junta,* 140 D.P.R. (1996), **96 JTS 38.**

La jurisprudencia ha identificado el procedimiento de clarificación de unidad apropiada, principalmente en cinco situaciones. En algunas de estas no es menester consultar a las personas que ocupan los empleos en cuestión, porque se presume que como dichos empleos son iguales a los que están incluidos en la unidad apropiada contratante, todos los empleados comparten el mismo interés en la representación. *N.L.R.B. v. Missisippi Power,* 769 F. 2nd. 276 (1985). En otras ocasiones, luego de la Junta haber certificado una unidad apropiada, ocurren cambios en los deberes y responsabilidades de los puestos de algunos empleados que amerita sean excluidos de la unidad apropiada. Tal es el caso en el que las nuevas circunstancias causan un conflicto de intereses que destruye la comunidad de intereses originalmente existente.

Ha sido resuelto por los tribunales federales que un grupo de empleados no puede ser añadido a una unidad existente mediante el procedimiento de clarificación, cuando antes habían sido intencional o históricamente excluidos de la unidad. Con el fin de salvaguardar sus derechos a escoger su representante en la negociación colectiva, es necesario auscultar los empleados inicialmente excluidos de la unidad contratante. *N.L.R.B. v. Missisippi Power, supra.* La composición de la unidad apropidada es cuestión de la exclusiva jurisdicción de la Junta. Esta determinación no ha de ser alterada si existe evidencia en el récord que la sustente, ausente otros indicios de que no ha habido prejuicio, arbitrariedad, parcialidad o ilegalidad. *Junta de Relaciones del Trabajo v. A.M.A.,* 119 D.P.R. 94 (1987). En la determinación de la unidad apropiada el factor clave es el identificar una comunidad de intereses que comparten los empleados. En 22 Federal Procedure, Lawyers Edition, Section 52:1044, se expresa este pensamiento del siguiente modo:

*"The touchstone of appropriate unit determinations is whether the unit's members have a recognizable community of interest sufficiently distinct from other employees to warrant their inclusion in a single unit. In determining whether the unit petitioned for in a particular case is appropriate, the NLRB has, with court approval, traditionally looked to such factors as homogeneity and distinctness of units, previous bargaining history in the company and the industry, similarity of jobs and functions performed by employees, relationship of the proposed unit to the employer's organization, whether the employees are interchanged with other employees, the extent of common supervision, the area bargaining pattern, the geographic proximity of the various parts of the employer's operation, differences in methods of compensation, hours of work, and employment benefits, the amount of working time spent away from the plant, and the degree of contact with other employees. [...]."*

EL Artículo III del convenio colectivo suscrito entre la A.E.E. y la UTIER dispone del siguiente modo:

*"La unidad apropiada a que se refiere este convenio la componen todos los trabajadores, según se clasifican y definen más adelante, que emplea la autoridad en la operación y conservación de los sistemas eléctricos y de riego, propiedad de o administrados por ésta y los de la división de ingeniería y construcción.*

*Quedan excluidos de la unidad apropiada los empleados ejecutivos, administradores, confidenciales o cualquier otro empleado con autoridad para emplear, despedir, ascender, disciplinar o de otra manera variar el estatus de los empleados o hacer recomendaciones al respecto. Quedan excluidos, además, los agentes especiales de seguridad, según estipulación firmada el 3 de noviembre de 1970 y cualesquiera otros empleados incluidos en otras unidades apropiadas de negociación colectiva ya establecida en la unidad."* (Página 555 del legajo).

En el ordenamiento laboral se ha establecido que los conflictos de intereses tienen que ser claros para excluir y requieren que el peligro de interés sea uno real. *("Clear and present"). N.L.R.B. v. David Bruttuck,* 399 F. 2nd. 505 (1968), First Circuit.

Respecto al término de *"empleado que presenta conflicto de intereses",* la Junta, en el caso D-465, observó que *"empleado que presenta conflicto de intereses con otros empleados, es un empleado cuyas recomendaciones, si se toman en cuenta, afectan o pueden afectar al personal de la empresa. Si estos empleados fueran parte de la misma unidad apropiada, de la que también fuesen los afectados por las recomendaciones, podrá surgir conflictos entre la organización obrera y la gerencia. En situaciones como estas pueden resultar afectados los empleados que hacen las recomendaciones o crearse situaciones difíciles entre ambas partes".*

Informa la A.E.E. que la Junta, aplicando los preceptos citados, evaluó las funciones que realizan los Operadores del Sistema de Distribución y en ese proceso examinó la naturaleza de las funciones, su magnitud y su ubicación en la estructura operacional de la A.E.E., la interacción de éstas en el descargo de las labores con los demás empleados, las destrezas y los procesos de producción. La Junta, como resultado de ese proceso de evaluación y análisis, por razón de su conocimiento especializado en la materia, fue del criterio que los operadores están ubicados en conflicto con los demás componentes de esa unidad y les excluyó de la misma. ■ Concurrimos con esa conclusión.

### III

En el caso ante nos, la Oficial Examinadora, en su informe de 24 de diciembre de 1991, señaló que los puestos de Operadores del Sistema de Distribución no tienen acceso ni relación confidencial con personas que formulan normas con las directrices o la política obrera patronal de la empresa, pero por sus funciones presentan conflicto con personal unionado de su propia unidad de trabajo y con personal gerencial. *"Por ejemplo, el personal gerencial del campo al que el operador de distribución le imparte órdenes y debe obedecerlas; personal unionado que es reclutado en la noche, cuando el operador de distribución se comunica con el supervisor de los unionados y le solicita que realicen algún trabajo o efectúe determinada maniobra; personal unionado y gerencial que tiene que suspender determinado trabajo en espera de que el operador de distribución le de el visto bueno para que continúen el trabajo comenzado, ya que el sistema requiere que se termine aunque tengan que trabajar tiempo adicional a la jornada regular de trabajo. En este contexto el operador de distribución tiene autoridad en el interés del patrono para extender la jornada de trabajo del personal unionado e impartirle directrices a los propios supervisores y gerenciales para dirigirlos con responsabilidad."*

En el Informe y Recomendación del juez administrativo, de 29 de junio de 1995, al igual que lo hiciera la Oficial Examinadora, señaló que por razón de la complejidad de las plazas los operadores pueden incurrir en conflicto de intereses con otros empleados unionados. Esa determinación, la que fuera adoptada por la Junta, está cimentada en las labores y funciones de estos operadores.

La ejecución de las labores de los operadores es de tal naturaleza que una falla en el sistema podría tener repercusiones graves en la comunidad. ■ Las tareas de estos puestos son de tal importancia para

la operación del sistema eléctrico que requiere que las instrucciones que impartan los operadores sean ejecutadas. Esas instrucciones, que están dirigidas al restablecimiento o conservación del sistema, conllevan la fijación de responsabilidad cuando la seguridad del empleado, propiedad y la comunidad están de por medio.

Un análisis de las funciones de los operadores revela que son únicas en el sistema eléctrico en Puerto Rico. Las funciones son las siguientes:

*"1. Dirige toda la operación de abrir y cerrar desconectores, fusibles, puentes, poner tierras y otros dispositivos instalados en las líneas que se vayan a integrar al sistema eléctrico, durante las vías que se vayan a integrar al sistema eléctrico, durante las vías libres y averías siguiendo las normas y procedimientos de la operación establecidos.*

*2. Opera todo el equipo de control local instalado en el centro de distribución incluyendo todo el equipo de control remoto con el cual se controlan las subestaciones de distribución, seccionadores, interruptores de transmisión y subtransmisión de toda la isla.*

*3. Consulta con su supervisor cualquier operación a efectuarse en las líneas que pueda afectar el voltaje o que ocasione sobrecarga indebida, para que pueda coordinar los ajustes necesarios.*

*4. Verifica que toda vía libre que recibe esté aprobada, le da seguimiento y si determina que la operación normal del sistema puede afectarse, consulta a su supervisor quien ordenará los cambios pertinentes.*

*5. Observa porque se mantenga en servicio las líneas de distribución y de alumbrado público de todas las subestaciones de distribución, incluyendo las privadas.*

*6. Notifica a todo el personal incluyendo a los consejeros de seguridad afectados por vías libres aprobadas o en caso de emergencia, de manera que dicho personal pueda prepararse y realizar el trabajo según programado.*

*7. Ejerce control respecto a las órdenes para operar el equipo que forma parte del sistema de distribución y alumbrado público.*

*8. Dirige y/o ejecuta toda la operación de abrir o cerrar interruptores de líneas de transmisión y distribución, instalados en subestaciones y/o patios de interruptores.*

*9. Registra todas las operaciones de líneas, interruptores y desconectadores en el plano esquemático del sistema, provisto en la computadora y hace los cambios correspondientes para mantenerlo al día.*

*10. Prepara vías libres de emergencia en el Sistema de Distribución así como el programa de maniobras y los pasa a su supervisor para aprobación. Para esto utilizará las [sic] información en el sistema de control disponible, tales como:*

*a. Lectura de voltaje de barra de subestación de distribución.*

*b. Lectura amperaje alimentadores.*

*c. Carta (KW, KVA-KVAR) de transformadores de subestaciones.*

*d. Localización de amarre de alimentadores.*

*e. Calibre*

*f. Estudio de tendencia gráfica (CRT Trend).*

*11. Lleva récords en la bitácora y en el sistema computarizado, de las operaciones diarias tales*

*como:*

*a. Las interrupciones diarias en las líneas de distribución.*

*b. Rendimiento y disponibilidad de instrumentos y equipos utilizados en la operación del sistema.*

*c. Todas las operaciones ejecutadas en el sistema de distribución.*

*12. Genera los estudios de tendencia gráfica para determinar comportamiento de las cargas en alimentadores y transformadores.*

*13. Ejecuta cualesquiera de los deberes de Despachador de servicio según le sea requerido, o durante la ausencia de los ocupantes de dichas plazas.*

*14. Informa al supervisor sobre cualquier condición anormal o deficiencia observada en los equipos o sistema eléctrico y prepara un informe de lo ocurrido para tomar acción inmediata.*

*15. Visita instalaciones eléctricas para familiarizarse con los equipos instalados y para ayudar al supervisor en adiestramiento personal.*

*16. Recibe y transmite instrucciones a través de equipos de comunicación existentes. "*

De esa lista de funciones se desprende la seria responsabilidad y complejidad del puesto. Nótese la seguridad que conlleva el manejar todo el proceso, los registros que deben llevar de las operaciones diarias que incluye todas las operaciones ejecutadas en el sistema, interrupciones diarias, rendimiento y disponibilidad de instrumentos y equipo. Estos empleados registran en bitácora todas las incidencias y descripción de la situación, lo que es lógico tenga por consecuencia que sus anotaciones conlleven la posible imposición de medidas disciplinarias. Por ello, los operadores deben sentirse en libertad de vertir todos los datos relacionados, incluyendo a los actores de determinado incidente, acción u omisión. Y es que se trata de un patrono que opera un negocio en donde, para la producción, son necesarios los controles de seguridad en la evitación de daños a la persona, a la propiedad y a la sociedad.

El sistema de energía eléctrica opera concatenado en la distribución y transmisión de energía. Mediante los sistemas de control instalados se reciben las lecturas del voltaje, amperaje, etc., por lo que el sistema no sería exitoso si los operadores de distribución, al intervenir con averías, interrupciones y el mantener funcionando el sistema, estuvieran en la difícil situación de mirar los pasos que dan para no afectar a otros co-empleados. ■

## IV

Dada la pericia y conjunto de conocimientos de la Junta en la materia, le corresponde identificar los cambios que pueda sufrir una unidad apropiada, esfuerzo éste que encierra el alcanzar una comunidad de intereses para la negociación colectiva. Por ello, la Junta ha considerado excluible de la unidad apropiada a aquellas clasificaciones de puesto que entre sus deberes puedan de manera directa o indirecta afectar o intervenir los demás empleados de la unidad apropiada por encontrarse en posiciones conflictivas, tales como Consejeros de Personal, Analistas de Ocupaciones, Auditores y los Despachadores de Area del sistema eléctrico. ■ Estos últimos, los Despachadores de Area, que habían sido excluidos de la unidad apropiada en el mes de octubre de 1990 por la Junta, tienen funciones análogas a las de los operadores, siendo la diferencia que administran un sistema eléctrico con otra cantidad de voltaje. ■ La exclusión de la unidad apropiada de los despachadores refuerza la decisión de excluir los operadores también.

Concluimos, pues, que los operadores, por razón de sus funciones, pueden presentar conflicto de intereses con personal unionado de su propia unidad de trabajo y con personal gerencial. Por ello, difícilmente podría encontrarse una prevalenciente comunidad de intereses con otros empleados. La calidad de común que pudiera existir palidece ante los embates de sus funciones.

## V

En virtud de lo que precede, es forzoso concluir que los Operadores del Sistema de Distribución se encuentran en una posición conflictiva con el resto del personal, por lo que resulta razonable su exclusión de la unidad apropiada.

Se confirma la decisión emitida por la Junta de Relaciones del Trabajo de Puerto Rico en el Caso Núm. PC91-14.

Así lo acordó el Tribunal y lo certifica la Secretaria General.

Aida I. Oquendo Graulau
Secretaria General

### ESCOLIOS 97 DTA 115

**1.** Al implantar una norma tomada de otra jurisdicción debe presumirse que se adopta también la interpretación y alcance que tenía en su lugar de origen. *Pueblo v. Reyes,* 100 D.P.R. 256 (1971).

**2.** Garantizándole el derecho a formar una unidad apropiada separada.

**3.** Véase el testimonio del Sr. David Mendoza, Operador del Sistema de Distribución.

**4.** Testimonio vertido del señor Mendoza, páginas 71-79 del apéndice.

**5.** Decisiones Núms. 90-1157, 90-1170 y 570.

**6.** El despachador es el que controla la transmisión de energía eléctrica desde que sale de la central generatriz hasta que es entregada en las subestaciones. El operador es responsable de administrar esa energía del transformador hasta el usuario. Páginas 75 y 76 del apéndice.