*1048 TEXTO COMPLETO DE LA SENTENCIA
La recurrente Daewoo Motor de Puerto Rico, Inc. (en adelante “Daewoo”), nos solicita la revocación de la resolución emitida el 7 de mayo de 2002 por la Oficina Regional de Arecibo del Departamento de Asuntos del Consumidor (en adelante “el DACO”). Dicha agencia ordenó “la resolución del contrato de compraventa celebrado entre José Hernández Ramos (comprador querellante) y Autoworld de Isabela (vendedor co-querellado) sobre el automóvil marca Daewoo, modelo. Lanos del año 1999. ”
Asimismo, el DACO ordenó- a Autoworld de Isabela (en adelante “Autoworld’) y a Daewoo, como deudores solidarios, a reembolsarle al querellante-recurrido Hernández Ramos el pronto pago del precio pagado ($3,495.00), así como las mensualidades que este último le había pagado a Ford Motor Credit Company (en adelante Ford Motor Credit”) por concepto del financiamiento del vehículo, más el interés legal aplicable. Relevó así al querellante del remanente del contrato de venta al por menor a plazos.
I
Allá para abril de 1999, el querellante le compró a la vendedora Autoworld el susodicho vehículo. El contrato establecía que el precio del vehículo era de doce mil novecientos noventa y cinco dólares ($12,995.00), cantidad financiada en parte a través de Ford Motor Credit.
Contemporáneo a la fecha del contrato, el querellante le reclamó a Autoworld que el vehículo sufría de problemas de calentamiento. Véase, Determinaciones de Hechos de la Resolución del DACO, Apéndice del Recurso de Revisión, a la pág. 3. En enero de 2001, el querellante presentó una querella ante el DACO, cuando el vehículo tenía ya unas 21,000 millas corridas. Alegaba el querellante que el vehículo presentaba “problemas de calentamiento”. Luego de una inspección realizada por un técnico automotriz del DACO, en el informe de inspección se consignó que el vehículo tenía un “cable partido en el piso al lado del estribó”, ocasionando que el auto no prendiera. A la fecha de la inspección, el auto llevaba dos (2) meses en el taller. Daewoo no asistió a la inspección, a pesar de haber sido debidamente notificado. Véase, Informe de Inspección del DACO (febrero de 2001), Apéndice del Recurso de Revisión, a la pág. 26.
Realizada otra inspección en marzo de 2001, el técnico automotriz del DACO escribió lo siguiente en su informe: “Auto se calienta. Abanico no le prende... Se instaló un fusible al abanico que no lo tenía y funcionó *1049 adecuadamenteVéase, Informe de Inspección del DACO (marzo de 2001), Apéndice del Recurso de Revisión, a la pág. 28. Procedió entonces el DACO al cierre de la querella en abril de 2001.
Posteriormente, en julio de 2001, el querellante presentó otra querella ante el DACO, esta vez alegando que el vehículo estaba varado al presentar “problemas con el motor”. En el informe de inspección de esta segunda querella, el DACO informó que el vehículo estaba “inoperante”. Véase, Informe de Inspección del DACO (agosto de 2001), Apéndice del Recurso de Revisión, a la pág. 31.
A la vista administrativa celebrada por el DACO en abril de 2002, asistieron, además del querellante, un representante legal de éste, y el gerente del departamento técnico de Daewoo, entre otros.
Las siguientes son algunas de las determinaciones de hechos, no controvertidas por Daewoo, que fueron emitidas por el DACO en su resolución aquí recurrida:

“4. Contemporáneo a la fecha del contrato, el querellante le reclamó a los funcionarios del negocio vendedor, que el automóvil objeto del contrato tenía defectos de calentamiento y/o altas temperaturas en el motor, lo que impedía el buen funcionamiento del mismo. Las reclamaciones se realizaron dentro de los términos de la garantía del automóvil.

5. El querellante realizó ocho [8] reclamaciones al negocio vendedor en relación a lo anterior. Para intentar mitigar o corregir, los funcionarios del negocio vendedor “cortaron la tapa del bloque” del motor en tres ocasiones. El defecto de temperaturas altas en el motor continuó y no pudo ser corregido. Daewoo de Puerto Rico supervisó e intervino en lo anterior. ” (Enfasis suplido.) Véase, Determinaciones de Hechos de la Resolución del DACO, Apéndice del Recurso de Revisión, págs. 2-3.
Así las cosas, el DACO, a través de su examinador legal (Ledo. Manuel B. Martínez Giraud) mediante una resolución emitida en mayo de 2002 y notificada en octubre del mismo año, ordenó la resolución del contrato de compraventa. De esta manera, consignó a la parte co-querellada vendedora, Autoworld, y a Daewoo a que, solidariamente, le reembolsaran al querellante el pronto pago del precio pagado ($3,495.00), más todas las mensualidades pagadas por el querellante por concepto de pagos o abonos al precio aplazado. Luego de recibir el pago del dinero antes indicado, el querellante tendrá entonces que devolver el vehículo al local de negocios de la parte vendedora.
Como parte de las conclusiones de derecho, el DACO hizo referencia al artículo del Código Civil de Puerto Rico que dispone que el vendedor está obligado al saneamiento de los defectos ocultos que tuviere la cosa vendida si la hacen impropia para el uso al cual se le destina. Asimismo, se refirió al Reglamento de Garantías de Vehículos de Motor, adoptado por el DACO en 1973. Recordemos que una ley especial sobre una materia debe prevalecer sobre cualquier otro precepto aplicable que sea de carácter general. París v. Canety, 73 D.P.R. 403 (1952).
Inconforme, Daewoo nos presenta los siguientes señalamientos de error:

“PRIMER ERROR: Erró el DACO al desatender la admisión contra interés del querellante sobre la falta de mantenimiento de que fue objeto el vehículo que nos ocupa, cuyo resultado fue el daño al “árbol de levas” y a las “vielas” del motor.

SEGUNDO ERROR: Erró el DACO al resolver que este vehículo tenía defectos de calentamiento y/o altas temperaturas del motor, lo que impedía el funcionamiento del mismo, fundamentado en la querella #1529 radicada por el mismo querellante el 19 de enero de 2000, sin estar presentes en ninguno de los dos (2) expedientes los criterios necesarios para probar la existencia de vicios ocultos redhibitorios.

*1050
TERCER ERROR: Erró el DACO al eximir de responsabilidad al taller administrado por Aguadillo Motor Corp. a pesar de la admisión contra interés de éste durante la segunda inspección y en la vista administrativa, a los efectos de que el motor se “desvíelo” después de qué él le reparó el “árbol de levas”, responsabilizando sin fundamento alguno a [Daewoo].

CUARTO ERROR: Erró el DACO al eliminar del expediente administrativo la Orden de servicio #1454 de Abréu Sales de Toa Baja, fechada 25 de junio de 2002, la cual era prueba ofrecida y no admitida de Ford Motor Company.

QUINTO ERROR: Erró el DACO al no exigir al querellante el cumplimiento con el Art. #4(a)(l) de la Ley 330 de 2 de septiembre de 2000. ”

Luego de examinado el expediente ante nos, el cual incluye una transcripción parcial de la vista administrativa, estamos en posición de resolver.
II
La revisión judicial de decisiones administrativas abarca tres áreas, a saber: (1) la concesión del remedio apropiado, (2) la revisión de las determinaciones de hechos, conforme al criterio de la evidencia sustancial, y (3) la revisión completa y absoluta de las conclusiones de derecho. Reyes Salcedo v. Policía de P.R., 143 D.P.R. 85, 93 (1997).
Un principio ampliamente establecido, aunque no absoluto es que las determinaciones de hechos de los organismos administrativos especializados, como DACO, merecen gran consideración y respeto por este Tribunal de Circuito de Apelaciones si las mismas están sostenidas por evidencia sustancial. Véanse, 3 L.P.R.A. sec. 2175; y Facultad para las Ciencias Sociales Aplicadas v. Consejo de Educación Superior, 133 D.P.R. 521, 532 (1993). El concepto de evidencia sustancial ha sido definido por el Tribunal Supremo como aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. Associated Insurance Agencies v. Comisionado de Seguros, 144 D.P.R. 425, 437 (1997). La evidencia debe ser considerada en su totalidad, incluyendo tanto aquélla que sostenga la decisión administrativa como también la que menoscabe el peso que la agencia le haya conferido. Id.
Corresponde así a la parte que impugna la determinación de una agencia administrativa el peso de establecer que la misma se tomó en ausencia de evidencia sustancial. Véase, Henríquez Soto v. Consejo de Educación Superior, 120 D.P.R. 194, 210 (1987). En igual medida, para alegar que la evidencia en la cual se fundamentaron las determinaciones de hechos de la agencia no es sustancial, la parte afectada deberá demostrar que existe otra prueba en el récord que reduce o menoscaba el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda prudentemente concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. Misión Industrial v. Junta de Planificación, 146 D.P.R. 64, 131 (1998).
Las conclusiones de derecho de la agencia, distinto a las determinaciones de hechos, podrán ser revisadas en todos sus aspectos por este foro, sin sujeción a norma o criterio alguno. Miranda v. C.E.E., 141 D.P.R. 775, 787 (1996). Esto no significa, sin embargo, que al ejercer su función revisora, el tribunal descarte libremente las conclusiones e interpretaciones de la agencia. Id. Por ello, el Tribunal Supremo ha reiterado en innumerables ocasiones que las determinaciones, conclusiones e interpretaciones incluidas en dichas decisiones tendrán gran deferencia al ser revisadas por este Tribunal. Viajes Gallardo v. Comisión de Servicio Público, 131 D.P.R. 275, 289-290 (1992). Esta deferencia responde al reconocimiento de que las agencias administrativas poseen vasta experiencia y conocimiento especializado, siendo éstas instrumentos necesarios para la interpretación de la ley. Reyes Salcedo v. Policía de P.R., supra, pág. 94. Sin embargo, dicha deferencia y respeto no significa una renuncia por parte de los tribunales en su función revisora. Por ello, el foro apelativo tendrá facultad para revocar *1051 la interpretación administrativa cuando la misma no sea válida por haberse cometido un error en la aplicación del derecho. Véase, Fuertes v. ARPE., 134 D.P.R. 947, 953 (1993).
Luego de hacer estos señalamientos generales sobre los contornos de nuestra función revisora, procedemos a analizar los distintos señalamientos de error presentados por Daewoo.
III
Alega Daewoo en su primer señalamiento de error que el DACO desatendió la admisión “contra interés” del querellante sobre la falta de mantenimiento del vehículo, resultando esto, alegadamente, en el daño al “árbol de levas” y a las “vielas” del motor. Para sustentar su alegación, Daewoo nos solicitó que ordenáramos al DACO la entrega de la transcripción de la vista administrativa. Acogida dicha solicitud por este Tribunal, la reproducción fue sometida, aunque de manera parcial, puesto que sólo se incluyeron las páginas 36 a la 51. Suspicazmente, el contenido del testimonio del querellante fue dejado fuera. De acuerdo al índice de la transcripción, dicho testimonio constaba de casi veinte (20) páginas del interrogatorio y contra-interrogatorio realizado al querellante. Sí encontramos en la transcripción sometida unas referencias a la alegada falta de mantenimiento, según testificara un testigo pericial de Daewoo. No podemos, sin embargo, entrar a analizar la supuesta admisión contra interés del querellante sobre la alegada falta de mantenimiento del vehículo sin que se nos haya sometido la parte de la transcripción correspondiente al propio querellante.
En virtud de la Ley Núm. 7 de 24 de septiembre de 1979, conocida como la “Ley de Garantías de Vehículos de Motor”, 10 L.P.R.A. sec. 2051 et seq., el DACO adoptó el Reglamento de Garantías de Vehículos de Motor, Reglamento Núm. 4797, entre otras cosas, para asegurarle a todo consumidor que adquiera un vehículo en Puerto Rico, que el mismo sirva los propósitos para los que fue adquirido, y que reúna las condiciones mínimas necesarias para garantizar la protección de su vida y propiedad. Pérez v. VPH Motors Corp., Op. del 3 de noviembre de 2000, 2000 JTS 177.
Por su parte, el artículo 1375 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3843, provee para que todo comprador pueda optar entre desistir del contrato, abonándosele los gastos que pagó, o reducir el precio de la compraventa toda vez que exista la presencia de alegados vicios ocultos en la cosa vendida. El vendedor no será responsable por los defectos manifiestos o aquéllos que estuvieren a la vista, ni tampoco de los que no lo estén, si el comprador es un perito que, por razón de su oficio o profesión, debía fácilmente conocerlos. 31 L.P.R.A. sec. 3841.
Si una vez verificada la entrega, se demuestra el incumplimiento por parte del vendedor de garantizar la plena posesión económica de la cosa vendida, el comprador tiene a su favor una pretensión de redhibición. Domínguez v. Caguas Expressway Motors, Inc., Op. del 24 de mayo de 1999, 99 JTS 85. El comprador tiene la opción de desistir del contrato, recobrando lo que pagó, o de dejar la venta subsistente, pero solicitar una rebaja en la cantidad del precio, aun cuando la venta subsista. 31 L.P.R.A. sec. 3843; Boyd v. Tribunal Superior, 101 D.P.R. 651, 655-656 (1973).
En estos casos es necesario determinar si los vicios o defectos son de naturaleza tal que justifiquen la acción redhibitoria. D.A.C.O. v. Marcelino Mercury, Inc., 105 D.P.R. 80, 83-84 (1976). El Tribunal Supremo ha indicado que constituyen vicios redhibitorios o cuantiminosos aquellos defectos que excedan de las imperfecciones menores que cabe esperar normalmente en un producto determinado, no siendo necesario que dichos defectos imposibiliten el uso de la cosa vendida, siempre que mermen notablemente su valor. Domínguez v. Caguas Expressway Motors, Inc., supra; García Viera v. Ciudad Chervrolet, Inc., 110 D.P.R. 158, 162 (1980); DACO v. Marcelino Mercury, Inc., supra, pág. 84. El comprador no tiene que demostrar específicamente cuál o cuáles piezas están defectuosas. García Viera v. Ciudad Chevrolet, Inc., supra, pág. 163. En una acción redhibitoria por vicios ocultos en vehículos de motor defectuosos, solamente compete al comprador probar que el automóvil que compró no funcionaba en forma normal y que el vendedor tuvo oportunidad de corregir los *1052 defectos y no pudo o no los corrigió. Ford Motor Co. v. Benet, 106 D.P.R. 232, 238 (1977); Ferrer v. General Motors Corp., 100 D.P.R. 246, 253 (1971).
Como es sabido, para que los vicios ocultos obliguen al vendedor a proveer saneamiento, es necesario cumplir con los siguientes requisitos: (a) éstos no deben ser conocidos por el adquirente; (b) el defecto debe ser grave o suficientemente importante para hacer la cosa impropia para el uso a que se le destina o que disminuya de tal modo este uso que, de haberlo conocido el comprador, no lo habría comprado o habría dado menos precio por ella; (c) que sea preexistente a la venta; y (d) que se ejercite la acción en el plazo legal, que es de seis (6) meses contados desde la entrega de la cosa vendida. Véanse, Pérez v. VPH Motors Corp., supra; y Ferrer v. General Motors Corp., supra.
Por su parte, ante una causa de acción de esta naturaleza, a la parte vendedora se le han reconocido varias defensas, entre ellas: que el adquirente del vehículo de motor le dio un uso indebido; que el vehículo de motor no tenía defectos de fabricación; y que las reparaciones fueron adecuadas. Pérez Ríos v. Hull Dobbs, 107 D.P.R. 834, 842 (1978). En aquellos casos en que el vendedor sostenga que el defecto alegado se debe a un uso indebido por parte de la parte demandante, corresponde a aquél demostrar la realidad de tal uso indebido. Ferrer v. General Motors Corp., supra, págs. 253-254; In re: Bird Copying Machines, Inc., 618 R2d 883, 885 (1st Cir.1980).
Como regla general, se ha resuelto que, de proceder la acción redhibitoria, incumbe a la parte vendedora la restitución de los gastos que el comprador pagó y que dicha responsabilidad se extiende al fabricante en virtud de la garantía que cobija al vehículo. Nadal v. Hull Dobbs, 102 D.P.R. 653 (1974); Ferrer v. General Motors Corp., supra.
La apreciación sobre la importancia de los defectos constituye una cuestión de hecho a ser dilucidada por el foro de Primera Instancia, que es quien está en mejor posición para hacer dicha determinación. Un tribunal apelativo no intervendrá con su discreción sobre este particular en ausencia de prueba adecuada o error manifiesto. Domínguez Talavera v. Caguas Expressway Motors, supra.
Por lo tanto, el segundo señalamiento de error de que DACO erró al resolver que el vehículo se sobrecalentaba sin contar con los criterios necesarios para probar la existencia de vicios ocultos redhibitorios, no se cometió. En el caso ante nos, tal y como ya señaláramos, el DACO determinó que “[cjontemporáneo a la fecha del contrato”, el querellante le reclamó al vendedor (Autoworld) varios defectos graves que sufría el vehículo. Además, consta en el expediente que el vehículo fue llevado a Autoworld por el querellante, apenas diez (10) meses luego de comprado el mismo, alegándose un ruido que provenía del motor y que la luz del “Check Engine” estaba encendida. Véase, Exhibit XX, Apéndice del Recurso de Revisión, a la pág. 53. En total, como ya señaláramos, en las determinaciones de hechos que consignó el DACO, el querellante realizó un total de ocho (8) reclamaciones al negocio vendedor.
En el tercer señalamiento de error, Daewoo nuevamente se refiere a otra supuesta admisión contra interés, esta vez alegadamente realizada por la co-querellada Aguadilla Motor Corp. (en adelante “Aguadilla Motor”) durante la segunda inspección del vehículo, de la cual Daewoo se ausentó, y en la vista administrativa, a los efectos de que el motor se “desvíelo” a causa de una labor realizada por Aguadilla Motor “sin la autorización de Daewoo”, (La querella en relación a Aguadilla Motor fue posteriormente desestimada por el DACO por falta de relación causal. Véase, Resolución del DACO, Apéndice del Recurso de Revisión, a la pág. 6.)
Sin embargo, según reza el primer informe de inspección realizado por DACO a los pocos días de haber sido presentada la primera querella en febrero del 2001, el “auto lleva dos meses en taller y no lo han reparado satisfactoriamente... El auto está inoperante.” Véase, Informe de Inspección del DACO, Apéndice del Recurso de Revisión, a la pág. 26. Por lo tanto, el vehículo ya estaba inservible.
*1053 Analicemos ahora el cuarto error alegado, que el DACO eliminó del expediente administrativo una orden de servicio realizado por otro taller de reparación, la cual era prueba ofrecida y no admitida de la co-querellada Ford Motor Company. (En la resolución del DACO, se desestima la querella en relación a Ford Motor Credit por no haberse cumplido con el requisito de notificación que establece la Ley de Ventas a Plazos, 10 L.P.R.A. secs. 731 et seq.)
Sabemos que, como principio básico fundamental, el apéndice, conforme a la Regla 59(E)(2) del Reglamento de este Tribunal de Circuito de Apelaciones, 4 L.P.R.A Ap. XXII, "sólo contendrá copias de documentos que formen parte del expediente original ante el foro administrativo". No obstante, las Reglas 16(E)(2), 34(E)(2) y 74 (C) indican que la parte apelante o peticionaria tendrá el derecho de elevar, en un apéndice separado, copia del legajo de la prueba ofrecida y no admitida cuando el planteamiento ante nos se refiera a un error sustancial en la exclusión de la pmeba específica de que se trate. Aun cuando el documento en cuestión no estuviese en poder del recurrente, hacemos constar que el trabajo alegadamente realizado por el otro garaje era de un “taller autorizado” de Daewoo. Véase Recurso de Revisión, pág. 17. De todos modos, el trabajo por este otro taller alegadamente fue realizado en julio del 2001 cuando el vehículo tenía ya unas 25,000 millas corridas, habiendo sufrido ya anteriormente de los otros vicios ocultos.
Como última alegación de error, el recurrente señala que el querellante incumplió con la Ley Núm. 330 del 2 de septiembre de 2000, conocida como la “Ley Complementaria de Garantías de Vehículos de Motor” (en adelante “la Ley”), 10 L.P.R.A. secs. 2066 et seq. Como bien señala Daewoo, esta Ley aplica a los vehículos de motor “adquiridos en y a partir del 1 de enero de 1999” (según el Art. 6), por lo que la misma es de aplicación al caso de marras. Daewoo cita parte de uno de los incisos del Art. 4 de la Ley, el cual dispone lo siguiente:

“§ 2069. Vicios de los vehículos de motor.

(a)(1) Después que tres (3) intentos hayan sido hechos para reparar el mismo vicio, el consumidor deberá entregar una notificación escrita, mediante correo certificado o expreso, sobre la necesidad de reparar el vicio con el objetivo de permitirle al manufacturero un intento final para remediarla. (Enfasis suplido.) 10 L.P.R.A. sec. 2069.
Daewoo sostiene que el querellante “no probó haber cumplido con este requisito de ley en el caso de las alegadas tres (3) reparaciones a la tapa del bloque de su motor.” Sin embargo, el vicio alegado desde un principio se refería al calentamiento del vehículo, lo que sí se hizo constar a través de las múltiples reclamaciones al negocio vendedor, el co-querellado Auto world. Véase, Determinaciones de Hechos de la Resolución del DACO, Apéndice del Recurso de Revisión, a la pág. 3.
Por otro lado, la propia querella ante el DACO, sometida en enero de 2001, y su posterior envío a los co-querellados Daewoo y a Autoworld, sustituyó la notificación por escrito exigida por la citada ley. Dicha notificación cumplió de manera substancial con el requisito que exige el citado artículo, aunque la misma no se realizara mediante correo certificado o expreso. El propósito de esta última disposición no es otro que asegurar que, en efecto, el querellado recibe la notificación. Copia del recibo de la notificación aparece en el expediente ante nos. Véase, Cita de Inspección, Apéndice del Recurso de Revisión, a la pág. 20.
IV
Finalmente, en la última página de su escrito ante nos, Daewoo señala lo siguiente:
“En la alternativa, el DACO, por su partej,] no cumplió con el [A]rt. 4(b)(1) [de la Ley Núm. 330, supra], al no disponer que se deduzca de la suma a pagar [al querellante] la compensación razonable por las [25,000] millas de uso del vehículo.” Véase, Recurso de Revisión, a la pág. 20.
*1054 En la resolución recurrida, el DACO ordenó a la parte co-querellada vendedora, Autoworld, y a Daewoo, solidariamente, a que dentro de un término de veinte (20) días reembolsen al querellante el pronto pago del precio pagado ($3,495.00) más todas las mensualidades contribuidas por el querellante. Dicha orden no tomó en consideración la compensación por el uso brindado por el comprador al vehículo.
Entendemos que este es el único error que se le puede imputar al DACO. Sin embargo, la cantidad a deducírsele al querellante debe ser por el uso proporcionado hasta la primera querella presentada ante el DACO, cuando el vehículo tenía veinte mil (20,000) millas corridas, en lugar de las veinticinco mil (25,000) al momento de la segunda querella sometida ante la agencia.
De acuerdo con la citada ley, a las cuantías que puedan concederse por concepto de incumplimiento de garantía debe restársele una compensación razonable por el uso brindado al vehículo por el comprador, conforme a la siguiente fórmula:
“Compensación razonable por uso.— Significa el número de millas atribuibles al consumidor hasta la fecha del acuerdo de conciliación (settlement agreement), multiplicado por el precio de compra del vehículo y dividido por ciento veinte mil (120,000), excepto que en el caso de un vehículo recreativo deberá ser dividido por sesenta mil (60,000). ’’ 10 L.P.R.A. sec. 2067(f).
Como señaláramos, surge de la primera querella ante el DACO que el millaje del vehículo era de 20,000. Véase, Querella, Apéndice del Recurso de Revisión, a la pág. 19. Multiplicadas esas 20,000 millas por el precio de venta de doce mil novecientos noventa y cinco dólares ($12,995.00), y dividido a base de 120,000 resulta en una compensación de dos mil ciento sesenta y seis dólares ($2,166.00). Esta cantidad deberá ser retenida al querellante luego del pago a ser recibido por éste según dispone el resto de la orden emitida por el DACO.
V
Por los fundamentos antes expresados, se expide el auto para modificar conforme a lo expresado en el acápite IV anterior, la resolución del 7 de mayo de 2002 emitida por la Oficina Regional de Arecibo del Departamento de Asuntos del Consumidor y así modificada se confirma.
Lo acordó el Tribunal y lo certifica la Señora Secretaria General.
Aida I. Oquendo Graulau Secretaria General
ECOLIOS 2003 DTA 55
1. El Tribunal Supremo indicó, además, que aunque un vicio no sea de naturaleza redhibitoria, la vendedora o el fabricante pueden venir obligados a repararlo por mor del contrato de garantía que se haya otorgado entre las partes y pueden incurrir en responsabilidad si la reparación es inadecuada y causa perjuicios. García Viera v. Ciudad Chervrolet, Inc., supra, pág. 163; 31 L.P.R.A. sec. 3018.
2. El plazo de seis meses se cuenta, no desde la fecha de la perfección del contrato, sino desde el día en que se interrumpieron las gestiones de inteligencia entre las partes. Ferrer v. General Motors Corp., supra, pág. 256; Casa Jaime Corp. v. Castro, 89 D.P.R. 702, 704 (1963).