*502 TEXTO COMPLETO DE LA SENTENCIA
El recurrente Classic Auto Corp. (en adelante Classic Auto), acude ante nos de una resolución emitida por el Departamento de Asuntos del Consumidor (en adelante DACO), que declaró con lugar una querella presentada en su contra, sobre rescisión de contrato de compraventa de un automóvil, por vicios ocultos.
Alega, en síntesis, el recurrente que incidió DACO al declarar con lugar la querella presentada por la recurrida Ms M. Ortiz Morales (en adelante Ortiz Morales), a pesar que la evidencia sustancial contenida en el expediente, era contraída a los hechos y al derecho en que se fundamentó tal dictamen.
Se confirma el dictamen emitido por DACO. Veamos los fundamentos de derecho.
I
Los hechos del presente litigio, tuvieron su origen el 3 de diciembre de 2003, cuando la recurrida Ortiz Morales, presentó querella ante DACO contra el recurrente Classic Auto, sobre rescisión de contrato de compraventa de un automóvil, por alegados vicios ocultos. (Ap. VI, págs. 24-25.) Según las determinaciones de hechos emitidas por DACO en su resolución, el 16 de noviembre de 2003, la recurrida visitó las facilidades de Classic Auto Sales, ubicadas en el Bo. Santana de Arecibo, y le interesó un vehículo de motor usado, marca Saab, modelo Scania, de 1995, tablilla CQJ-245. Al día siguiente, la recurrida regresó a Classic Auto y realizó una prueba al vehículo antes mencionado.
La recurrida se percató que el auto tenía problemas al frenar y lo indicó así al empleado que la atendía, quien verificó el vehículo y el área del pedal del freno. La recurrida también le manifestó que el auto emitía un ruido a lo cual el empleado le contestó que eso era normal en ese vehículo.
Ese mismo día en horas de la tarde, la recurrida Ortiz Morales regresó al “dealer” para recoger el vehículo y firmar los documentos de compraventa. En el contrato de compraventa se hizo constar el precio del vehículo en $10,000 más $50 para registro y traspaso, para un total de 10,050 dólares. La recurrida pagó mediante cheque la cantidad restante de 9,550 dólares. El contrato de compraventa también indica en el área de observaciones en la parte inferior que el vehículo se vendió, “as is”, es decir, sin garantía alguna. (Ap. IV, págs. 22-23.)
La recurrida Ortiz Morales preguntó al “dealer” recurrente sobre la garantía del vehículo, pero se le negó garantía alguna indicándole que el auto estaba en buenas condiciones. El recurrente Classic Auto nunca le explicó a la recurrida sobre la garantía negociada, ni los diferentes precios con o sin garantía, según la reglamentación de DACO.
Ante tales circunstancias, el 20 de noviembre de 2003, la recurrida le reclamó a la recurrente sobre el problema con los frenos, pero ésta negó responsabilidad. Como la recurrida sentía que el auto emitía un ruido muy fuerte, el 3 de diciembre de 2003, lo llevó al taller Sport Tech para inspección. Pagó por el estimado $40, el cual reflejaba que el auto tenía problemas, entre otros, con los frenos, los “lifters” y una pieza de la transmisión. Posteriormente, la recurrida no pudo continuar haciendo uso del auto, sólo lo usó por *503 aproximadamente cinco (5) a diez (10) días, desde que lo adquirió.
Así las cosas, el 28 de abril de 2004, la recurrida llevó el vehículo en grúa al taller Raymond Burt para inspección y para estimado de reparación. La inspección realizada reflejó problemas en el motor con la presión de aceite, sonidos de casquillo de viela y cadena de tiempo, y los “lifters”; problemas con la bomba de frenos; y la transmisión tenía el soporte roto. La recurrida pagó $85 por el estimado. El costo de grúa por ida y vuelta fue de 200 dólares.
El 20 de mayo de 2004, DACO llevó a cabo una inspección del vehículo, el cual tenía un millaje de 68,225. La recurrida pagó $75 por el servicio de grúa hasta el “dealer”. Conforme surge del informe del técnico, el auto en cuestión reflejó lo siguiente:

“A. El auto fue transportado en grúa al lugar de la inspección.

B. Auto prendió y presentó ruido en la parte superior del motor.

C. Al subirlo a la grúa, presentó ruido de viela.

D. No frena correctamente.

E. Punto de transmission (sic) defectuoso.

F. Fuga de aceite de motor considerable, área del damper. ”

(Ap. VIII, pág. 28.)
Considerando la prueba documental y testifical presentada ante sí, DACO emitió su dictamen el 5 de mayo de 2005, declarando con lugar la querella presentada por la recurrida. Ordenó, en síntesis, al recurrente Classic Auto que:

“[...] le pague a la querellante [recurrida] IRIS M. ORTIZ la cantidad de $10,450.00.00 (sic), más los intereses legales [...].

Luego de recibir los $10,450.00, la querellante entregará al querellado el vehículo en controversia. [...]. ”

(Ap. I, pág. 5.)
Inconforme con tal dictamen administrativo, Classic Auto acude ante nos en su revisión, alegando en síntesis que DACO no tuvo prueba suficiente ante sí, para ordenar la rescisión del contrato.
No le asiste la razón y el derecho.
II
Expuestos los hechos pertinentes, procedemos a discutir la norma jurídica aplicable.
A
Reglamento de Garantías de Vehículos de Motor de DACO
Mediante la Ley Orgánica de DACO, Ley Núm. 5 de 23 de abril de 1973, se creó dicha agencia con el propósito principal de vindicar, proteger e implementar los derechos de los consumidores. 3 L.P.R.A. see. 341 *504 (b). Martínez Sanabria v. DACO, opinión de 30 de diciembre de 2004, 2005 J.T.S. 2, pág. 594. A virtud de la Ley de Garantías de Vehículos de Motor, Ley Núm. 7 de 24 de septiembre de 1979, según enmendada, se promulgó el Reglamento Núm. 4797 de Garantías de Vehículos de Motor (Reglamento Núm. 4797), como mecanismo para proteger adecuadamente a los consumidores de Puerto Rico en la adquisición de vehículos; asegurarles que estos vehículos sirvan para los propósitos para los cuales fueron adquiridos; y reúnan las condiciones necesarias para garantizar al comprador la protección de vida y propiedad. Reglamento Núm. 4797, supra, Artículo 2; Polanco López v. Cacique Motors, opinión de 30 de junio de 2005, 2005 J.T.S. 101, pág. 1485.
Este Reglamento es aplicable a toda persona que se dedique a la venta de vehículos de motor nuevos o usados en Puerto Rico. Reglamento Núm. 4797, supra, Artículo 3. Específicamente, el Artículo 24 dispone sobre la naturaleza de la garantía en los vehículos de motor usados. Tal articulado establece que todo vendedor de vehículos de motor usados, concederá garantía en piezas y mano de obra. Ahora bien, el inciso 2 del referido artículo dispone que:

“Lo establecido en la Sección anterior no tendrá vigencia alguna en caso de que entre el vendedor y el comprador se haya llegado a un acuerdo, en el cual el consumidor hace una renuncia consciente, informada y por escrito de su derecho a la garantía establecida en este Reglamento.

El vendedor tendrá la obligación de indicarle al consumidor, por escrito, que el vehículo no tiene garantía alguna. [...]”.

Reglamento Núm. 4797, supra, Artículo 24.2.
Respecto a los defectos del vehículo, si el comprador así lo desea, DACO tiene la potestad de decretar la resolución del contrato o reducir proporcionalmente su precio de venta, en aquellos casos en que el vendedor tuvo oportunidad razonable para reparar los defectos, mas no quiso o no pudo repararlos. DACO determinará caso a caso lo que constituye “oportunidad razonable”, para reparar el vehículo de motor. Reglamento Núm. 4797, supra, Artículo 27.3.
B
La Doctrina de Vicios Ocultos
El Código Civil dispone que le corresponde al vendedor entregar la cosa acordada como objeto de -compraventa, y asegurar al comprador su posesión pacífica y útil. Artículo 1350 del Código Civil, 31 L.P.R.A. see. 3801. El propósito o causa de la venta para el comprador es adquirir la cosa para servirse de ella y dicho propósito dejaría de realizarse, si una vez hecha la entrega el comprador se ve privado de la cosa o imposibilitado de aplicarla a los usos que le son propios. Ferrer Delgado v. G.M.C., 100 D.P.R. 246, 254-255 (1971). Véase, además, Bosques Soto v. Echevarría, opinión de 13 de septiembre de 2004, 2004 J.T.S. 158, pág. 232. Por ello, surge la obligación de garantía que tiene el vendedor, la que se denomina en el Código Civil como obligación de saneamiento. Esta obligación de saneamiento se define como:

“La acción de saneamiento es una acción especial propia de los contratos de compraventa que refleja la obligación del vendedor de garantizar al comprador el uso y disfrute de la cosa objeto del contrato. Presenta dos modalidades: el saneamiento por evicción y el saneamiento por vicios ocultos en la cosa. ”

Márquez v. Torres Campos, 111 D.P.R. 854, 861-862 (1982).
Para que los vicios ocultos puedan ser objeto de saneamiento: (1) no deben ser conocidos por el adquirente, (2) el defecto debe ser grave o suficientemente importante para hacer la cosa impropia para el uso a que se le *505 destina o que disminuya de tal modo este uso que, de haberlo conocido el comprador, no la habría comprado o habría dado menos precio por ella, (3) que sea preexistente a la venta, y (4) que se ejercite la acción en el plazo legal, que es el de seis (6) meses contados desde la entrega de la cosa vendida. Artículo 1379 del Código Civil, 31 L.P.R.A. see. 3847; DACO v. Marcelino Mercury, Inc., 105 D.P.R. 90, 83-84 (1976).
El plazo de seis (6) meses que establece el Artículo 1379 del Código Civil, supra, para instar la acción de saneamiento por vicios ocultos no se cuenta desde la fecha de la perfección del contrato, sino desde el día en que se interrumpieron las gestiones de inteligencia entre las partes, ya que las constantes reclamaciones y contestaciones de los interesados obstan a la prescripción. Este plazo es de aplicación a aquellos contratos de venta en los cuales no hay un término de garantía para la reparación gratuita de la cosa vendida por cuenta del vendedor. Ferrer Delgado v. G.M.C., supra, 256; Casa Jaime Corp. v. Castro, 89 D.P.R. 702, 704 (1963).
Según dispone el Artículo 1375 del Código Civil, en los casos de saneamiento por defectos o vicios ocultos, el comprador podrá optar entre:

“[...] desistir del contrato, abonándosele los gastos que pagó, o rebajar una cantidad proporcional del precio, a juicio de peritos. Si el vendedor conocía los vicios o defectos ocultos de la cosa vendida y no los manifestó al comprador, tendrá éste la misma opción y además se le indemnizará de los daños y perjuicios, si optare por la rescisión. ”

31 L.P.R.A. see. 3843.
Aplicando esta normativa a los casos de vehículos de motor con vicios ocultos, nuestro más alto foro ha resuelto que corresponde al comprador demostrar que el vehículo que compró no funciona normalmente y que la parte querellada tuvo oportunidad de corregir el defecto, pero no lo corrigió o no pudo corregirlo. La parte querellada sólo queda exenta de responsabilidad, si como defensa afirmativa demuestra que el funcionamiento anormal es causado por actos del comprador. Ferrer Delgado v. G.M.C., supra, pág. 253. De no demostrar el vendedor la responsabilidad del comprador por el defecto, este último tiene derecho a que se le reembolse el precio pagado por el vehículo y los gastos en que necesariamente incurrió por motivo de los defectos o vicios del mismo. Si el vendedor del vehículo de motor conocía los vicios o defectos cuando llevó a cabo la venta, procede indemnizar al comprador por concepto de daños y peijuicios. Id., págs. 256-257.
C
Alcance de la Revisión Judicial
Los tribunales en su función revisora, podrán intervenir con los dictámenes de las agencias administrativas, si se demuestra por el que promueve su revisión que éstas son irrazonables, ilegales, contrarias a la ley que creó la agencia que las dictó, medió abuso de discreción al ser emitidas o no se sostienen por el expediente administrativo. Descansa este principio en que las agencias, como foro de instancia administrativo, están en mejor posición para apreciar la prueba que se presentó ante sí. Sección 4.5, Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. see. 2175; Rebollo v. Yiyi Motors, opinión de 13 de enero de 2004, 2004 J.T.S. 4, pág. 501; García Viera v. Ciudad Chevrolet, Inc., 110 D.P.R. 158, 162 (1980). (Casos citados.)
Bajo tal principio, si las conclusiones de derecho de un foro administrativo “están fundamentadas bajo el mandato de ley”, el tribunal revisor debe sostenerlas. Rivera v. J. C. A., opinión de 3 de marzo de 2005, 2005 J.T.S. 23, pág. 768; Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 134 (1999). (Casos citados.) La decisión que emita la agencia no tiene que ser la única a la cual se pueda llegar, pues es suficiente que esté sostenida por evidencia sustancial en el récord administrativo, que sea razonable y consistente con el propósito legislativo del estatuto que se promueve y aplica, en la controversia. Le compete al que impugna el dictamen administrativo, el probar su ilegalidad. Cruz Negrón v. Adm. de Corrección, opinión de 28 de marzo de 2005, 2005 J.T.S. 39, pág. *506 943; Rodríguez v. Méndez & Co., 147 D.P.R. 743, 745 (1999).
Por último, el foro apelativo al realizar su función revisora, debe tomar en cuenta al analizar el expediente de las agencias que las reglas de procedimiento civil y de evidencia no aplican en los trámites administrativos. Los piincipios sobre la aplicación de tales reglas deben usarse de manera liberal y en búsqueda de la verdad. O. E.G. v. Rodríguez, opinión de 1 de abril de 2003, 2003 J.T.S. 51, pág. 793; Florenciani Valentín v. A.S.R., opinión de 30 de junio de 2004, 2004 J.T.S. 120, pág. 3.
III
Aplicación de la Norma Jurídica
Según surge del contrato de compraventa del vehículo de motor en cuestión, se acordó su venta “As Is-no garantía, Se le explicó a la Sra.”; es decir, que no se daba garantía. Ahora bien, conforme a la prueba testifical creída por DACO:

“[...] el querellado [recurrente] nunca le explicó a la querellante [recurrida] sobre la existencia o no de garantía del vehículo ni los diferentes precios de venta con y sin garantía. Tampoco le explicó sobre su derecho al saneamiento por vicios ocultos. ”

(Véase, Ap. I, pág. 3.)
Debemos considerar que DACO tuvo la oportunidad de ver y oír declarar a los testigos, concediéndole entera credibilidad al testimonio presentado por la recurrida. Dadas las circunstancias que el recurrente Classic Auto nunca le explicó a la recurrida sobre la existencia o no de garantía del vehículo de motor, tal supuesta renuncia por parte de la recurrida no fue consciente ni informada. Por lo cual, no se cumplió con el requisito dispuesto en el Reglamento Núm. 4797, supra, para que una renuncia a la garantía sea válida, pues tal reglamento exige claramente que ésta sea consciente e informada.
Asimismo, como bien expresó DACO en su resolución:

“Si tomamos como cierto que el vehículo no tenía garantía, aún así, la querellante podría tener derecho al saneamiento por vicios ocultos. ”

(Ap. I, pág. 3.)
Por tanto, aun bajo el supuesto que el vehículo de motor adquirido por la recurrida no tuviese garantía, pues se había renunciado, evidentemente adolecía de vicios desde la venta, que obligaban a la recurrente Classic Auto a su saneamiento. Aproximadamente a los tres (3) días de efectuada la compraventa, la recurrida fue donde la recurrente expresando nuevamente que el auto presentaba problemas con los frenos. Cabe señalar que aún antes de efectuarse la compraventa, cuando la recurrida probó el vehículo, le indicó al recurrente que el auto no frenaba y que emitía un ruido, pero ésta le informó que era normal. Igualmente, la recurrida sólo pudo usar el auto por aproximadamente cinco (5) a diez (10) días desde que lo adquirió, debido a desperfectos mecánicos.
Concluyéndose por DACO que había vicios ocultos en el vehículo de motor que privó a la compradora de su uso, ésta podía optar por desistir del contrato abonándosele los gastos que pagó, o rebajar una cantidad proporcional del precio, a juicio de los peritos. Habiendo solicitado la recurrida a través de su querella la devolución del dinero pagado al recurrente, más una compensación por los daños incurridos, concluimos que tiene derecho a tal petición. El dictamen de DACO concediendo tal remedio se sustenta en derecho, y Classic Auto no ha podido probar en revisión su ilegalidad.
*507 Por último, en cuanto a los errores que señala Classic Auto, respecto al trámite ante DACO del traslado del caso de una oficina regional a otra y las facturas admitidas de estimado sin firmar, tampoco fueron cometidos. Surge de los documentos que las facturas están firmadas o son “formatos” y el traslado del caso como evento procesal, no establece prejuicio o parcialidad en la adjudicación de la querella por DACO. De otra parte, las reglas procesales civiles y de evidencia no aplican en los procesos administrativos, siempre que se logre con el dictamen administrativo la búsqueda de la verdad y la justicia.
IV
Se confirma la resolución emitida por DACO, por ser conforme a derecho.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones